PANZL v. BATTLE ISLAND PAPER & PULP CO. et al.

(District Court, N. D. New York. August 30, 1904.)

No. 6,943.

1. PATENTS—SUIT FOR INFRINGEMENT—MATTERS OF WHICH JUDICIAL NOTICE MAY BE TAKEN.

In a patent suit the court may refer to the dictionaries and encyclopedias for the definition and scope of scientific terms or names, when necessary to go outside the record, or where the testimony of experts is conflicting.

2. SAME—DEFINITIONS—"CHAMOTTE."

The term "Chamotte," as used in the arts, has a broader meaning technically than ordinary fire brick crushed or fire clay, and means, when used to describe an element in a patented combination, a clay which has been burned to an extent which deprives it of further shrinkage on being again subjected to heat.

3. SAME—INVENTION—COMPOSITION FOR LINING PULP DIGESTERS.

The Panzl patent, No. 644,367, for a composition of material for lining vessels used for storing or boiling corrosive liquids, intended for a lining for pulp digesters, which should be acid-proof, describes a combination in new and specified proportions and in a new manner of well-known materials, which produces a superior composition, and was not anticipated, and discloses invention. Also held infringed.

4. SAME—INFRINGEMENT BY CORPORATION—PARTIES DEFENDANT.

Officers or employés of a corporation cannot be joined with it in a suit for infringement, where in what they did they acted only for the corporation, and it is not alleged to be insolvent.

On Rehearing.

5. SAME—SUIT FOR INFRINGEMENT—REHEARING.

An application to reopen the case after final hearing in a suit for infringement to permit the taking of additional testimony on a question of fact arising on the issue of anticipation will not be granted, where the evidence could have been produced on the hearing by the exercise of due diligence.

In Equity. Suit for infringement of letters patent No. 644,367, for a composition of materials for lining vessels used for storing or boiling corrosive liquids, granted to Romedius Panzl February 27, 1900. On final hearing.

Schreiter & Mathews (Henry Schreiter, of counsel), for complainant.

Mead, Strannhan & Guile (Howard P. Denison, of counsel), for defendants.

HAZEL, District Judge. This is a suit to establish infringement of United States letters patent No. 644,367, granted to Romedius Panzl February 27, 1900, for new and useful improvements in composition of material for lining vessels for storing or boiling corrosive liquids. The object of the patentee was to invent a composition for lining of digesters which would be absolute proof against the corrosive solutions necessarily involved in the sulphite wood-pulp process.

The defendants Battle Island Paper & Pulp Company, George C. Webb, Richard J. Cullen, and John Kovagec are now before the

court. The Battle Island Paper & Pulp Company is the owner of the mill at Fulton, N. Y., where the infringement is alleged to have occurred. Webb, the treasurer of the defendant corporation, and Cullen, its superintendent, are charged with actively engaging in the construction of the infringing lining. Kovagec and other defendants, who are workmen, are charged with actively assisting in its construction. The answer challenges the validity of the patent, denies infringement, and asserts prior public use. The specification, after stating that the invention consists of a composition of material for lining the interior of vessels, tanks, or other similar vessels for storing or boiling corrosive liquids, says:

"Such lining for boilers and tanks used for storing or boiling of corrosive chemicals, as heretofore produced of hydraulic cement mixed with sand and of tiles applied thereon, being from five to seven inches thick, greatly diminishes the capacity of the vessel, and is not absolutely impervious to such corrosive fluids. Superlining with glazed acid-proof tiles is not sufficient to protect the lining material from disintegration."

The specification further states that by the use of hydraulic cement and sand a swelling and contracting of the mass is produced, which results in forming cavities in the lining, through which the acids penetrate and destroy the boiler or vessel. The patentee declares that as a result of experiment he has discovered that a composition of hydraulic or burnt cement, chamotte, and quartz, or some other silicious material, finely powdered, and then mixed with diluted silicate of soda, will produce a plastic material, and may readily be applied to the interior sides of walls of the boiler or vessel. When so applied the material is absolutely impermeable to corrodible fluids, and protects the iron or metal of which the vessels are necessarily constructed. The claims of the patent, three in number, all of which are alleged to be infringed by defendants, read as follows:

"(1) A composition of matter for acid-proof lining of boilers, tanks, and similar vessels, composed of hydraulic cement, chamotte, some silicious material, water, and silicate of soda.

"(2) A composition of matter for acid-proof lining of boilers, tanks, and similar vessels, composed of hydraulic cement, pulverized chamotte and quartz, and of diluted silicate of soda.

"(3) A composition of matter for acid-proof lining of boilers, tanks, and similar vessels, composed of twenty-six per cent. of hydraulic cement, twelve per cent. chamotte, twenty-one per cent. of quartz and of a suitable quantity of diluted silicate of soda."

The proportions of the materials enumerated and the description of the method adopted by the patentee in preparing his lining, are substantially as follows: Twenty-six parts hydraulic cement, 12 parts pulverized chamotte, 17 parts commercial silicate of soda, 21 parts silicious material (preferably pulverized quartz), and 24 parts pure water. The proportions of these materials, expressed in parts, and measured by volume, may be moderately varied according to their qualities from the standard set out in the patent. The chamotte and quartz are finely pulverized, and mixed with the cement while dry. To assimilate the silicate of soda with water, a suitable boiler is filled with the latter, and the proportion of silicate of soda

above stated is successively added thereto while the water is boiling, the proportions being varied according to the quality of the silicate of soda used. The specification further states that the dry ingredients are moderately heated at a stated temperature and mixed with the wet ingredients. The plastic material is applied while hot to the interior of the vessel to be lined. Thus it appears, if the method suggested is followed, the object of the inventor will be attained and a compact acid-proof lining for digesters and boilers produced. The patentee was not the first to describe and claim a homogeneous lining for digesters, or a composition of cementitious material as a protection to iron or metal vessels from corrosive influences. He did not discover the ingredients nor their adhesive qualities. He claims, however, to have made a step forward in an art already well known and understood at the date of his invention, and that he first combined the requisite qualities of a suitable, economical and lasting lining for pulp digesters, which is absolutely impervious to corrosive fluids or chemicals. He admits that the primary substances specified in the patent were well known in the art. Hydraulic cement, quartz, silicate of soda, and chamotte are abundant in nature, and their properties and characteristics were commonly known. But the principal contention of complainant is that, to combine these substances or ingredients in the manner stated, and to combine them in such proportions as to result in the achievement of any of the functions which they perform in the composition in suit was wholly unknown prior to the patent in suit; that the prior art does not disclose a mixture of the identical substances, and accordingly it was wholly unknown prior to the Panzl patent that an absolutely acid-proof lining is produced by the commingling or mixing together the materials as specified. The testimony of the expert witnesses is conflicting. The technical signification and classification of chamotte as a particular ingredient for lining is left in doubt by the evidence, and reference has, therefore, been had to standard dictionaries, publications, and books of science, for such information as, in the judgment of the court, was necessary to clarify the disputed point. Authority for so doing may be found in Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Beer v. Walbridge, 100 Fed. 465, 40 C. C. A. 496. Thorpe's Chemical Dictionary, 1884, describes chamotte as a "mixture of fire clay and burnt pottery used for making fire bricks, crucibles, pipes, etc." The English patent to Kreinsen, No. 14,516, found in the record, speaks of chamotte as "a mixture of fire clay and burnt pottery; old crucibles and the like." The Reis Report of Clays of New York State, 1900, comprehensively describes chamotte and the uses to which it has been applied. The term "chamotte," the author says, is applied to burnt clay. "It possesses all the advantages of quartz as a diluent to the shrinkage, but has the advantage over it that it does not affect the fusibility of the clay, or swell with an increase of temperature; hence it does not tend to lessen the structure of the finished product." It further appears that the clay ordinarily used for the purpose stated must be burned to an extent which deprives it of further shrinkage on being again subjected to

heat. For the purpose of producing a porous body, burnt clay may either be ground up pottery or calcine clay. It becomes highly refractory by repeated burning, which, as has been stated, causes a shrinkage of the clay, and the alkalis are thereby volatilized. The testimony of complainant's expert witness supports this definition. He testifies that when speaking of chamotte he means calcined clay, which is essentially silicate of alumina and water. In its preparation the water or moisture is driven out by heating, so as to produce contraction and baking of the clay. He further adds that ordinary fire brick is not chamotte, and only becomes such after undergoing the process outlined. The effect of the chamotte when mixed with the other ingredients is thus described by him:

"The chamotte, owing to its chemical characteristics and porosity, acts in such composition also as a storage medium or repository for the silicate of soda. It retains a considerable quantity of silicate of soda in its unchanged condition. This silicate is held by the chamotte, and is gradually drawn upon by the cement, thus extending the period of setting or hardening of the mass, thereby facilitating its application to the digester, and increasing greatly the durability of the lining and its resistive powers."

According to the expert witnesses for defendants, chamotte is merely crushed fire brick—that is, clay without sand, heated to a high temperature—and hence is the identical material referred to as fire brick in the patents of Wenzl, Kellner, No. 4,959, Norton, No. 480,934, and others contained in the record. If the consideration given to the word "chamotte" in order to ascertain its exact meaning and import impelled the acceptance of the view of the defendants' expert witnesses, the invalidity of the Panzl patent because of the prior art would seem plain, and the combination of the materials mentioned in the claims would lack invention. But it is apparent from the definitions above quoted that the term "chamotte" technically is accorded a wider signification than that claimed by the defendants, and that it is not restricted to ordinary fire brick with which furnaces are lined, though in its classification burnt clay or fire brick is included. The evidence shows that chamotte and a silicious material compounded with hydraulic cement and silicate of soda produces the desired even distribution of the particles forming the cement, and prevents the formation of inequalities and cracks in the hardened mass. The action of the mixture is thus explained by complainant's expert witness:

"When the cement and the silicate of soda react upon each other, there is formed mono calcium silicate and caustic soda. If the caustic soda would remain uncombined, treatment with water would remove it from the mass, thereby causing a certain porosity, which eventually would allow the acid liquors in the digester to penetrate the mass and corrode the shell. The chamotte, however, as well as the silicious material, of whatever nature it may be, possesses an affinity to the soda thus liberated. It is mainly the chamotte that shows the greater affinity to the soda with which it combines to form an insoluble compound, whereby a very hard, stony mass is produced. The soda is then not washed out, and the porosity which otherwise would follow is prevented."

As has been indicated, ordinary fire brick does not possess the properties of chamotte. The density of the mass or body which is formed when it is mixed or united with the silicious material is

absolutely impenetrable to deteriorating influences, and the lining will practically and securely withstand not only the acids and fumes destructive to the structures of the prior art, but also the rough usage which digesters receive. Hydraulic cement, in combination with a sufficiently large quantity of silicate of soda, produces mono calcium silicate, and, according to complainant, in none of the alleged anticipatory patents is it produced free from di or tri calcium silicate; ·hence the prior art does not disclose an acid-proof composition of material. It is insisted by complainant that the main value of the patent in suit lies in the production of mono calcium silicate, and its object could not be attained without it. The evidence is persuasive that the formula of the patentee .is free from di or tri calcium silicate, an element which renders the composition defective as an acid-proof lining. The patents of Wenzl, Norton, Kellner, and others, though showing acid-resisting processes of high order, nevertheless fail to disclose a combination of ingredients entirely free from the defective mixture of di or tri calcium silicate, and, accordingly, the linings there described are thought not to be absolutely proof against the acid solutions. The process of mixing hydraulic cement and silicate of soda for the purpose of making an adhesive and chemical resisting lining was very well known at the date of the patent in suit. The characteristic feature, however, of the Panzl combination rests in compounding the ingredients of the process in certain proportions so that the chemical reaction referred to will be obtained and an acid-proof lining be produced. The conception of this combination resulted from experiment, comparisons with the prior art, and practical tests with various compositions in nature. Unless anticipated, it is entitled to protection. Little doubt arises that the process described in the patent was an advance or addition to those already known. Others were endeavoring to invent a process which would prevent the disintegration of boilers by corrosive fluids. All seem to have failed, except the patentee in suit. The Swedish patent to Wenzl, dated November 13, 1888, relates to cellulose boilers, and was invented to resist the action of chemical fluids. According to the translation of the specification the mixture consists "of about one part by weight of cement, and two parts by weight of fire brick, or brick dust, or sand, or a mixture of two or all three of these materials." Although defendants claim that the compounded material of the Wenzl patent contains precisely the same ingredients as the claims in suit, nevertheless, from what has been said regarding the term "chamotte," it is manifest that such ingredient, as an essential element, is absent in the Wenzl process. Moreover, Wenzl does not clearly indicate the proportions of materials, or definitely specify the particular materials to be compounded. The clearness with which the patent in suit points out the method to be adopted and specifies the proportions of materials to be used to successfully manufacture the lining is important, and readily distinguishes the Panzl method from the number of prior patents upon which defendants place reliance. The relative proportions of material used, as has been said, is important in producing the

result. I am impressed by Dr. Endemann's analysis of the Wenzl patent. He testifies that by the process there described mono calcium silicate is not produced, and the mixture of the ingredients does not cause the chemical reaction necessary to achieve the results attained by the Panzl process. The practical tests made by defendants' expert witnesses would seem to support the complainant's position. Hydraulic cement, chamotte, and quartz, and sand appear to have been used in the proportions of the patent in suit. The evidence shows that some of the materials specified in the Panzl patent were used in making these tests, and that the fire brick mentioned in the Wenzl patent was treated as the equivalent to the chamotte, sand the equivalent to quartz, and the materials were compounded in the precise proportions of the patent in suit. The German Jung & Lindig patent, No. 47,976, dated January 27, 1889, is for an acid-proof lining for pulp digesters by the use of sulphite of lime and silicate of soda. The silicate of soda produced by the mixture described in the specification does not unite with chamotte nor with quartz and, therefore, does not secure the nonporous lining. In the Norton patent, No. 480,934, dated August 16, 1898, the ingredient chamotte is not mentioned. The process, therefore, is as complainant asserts, not a complete embodiment of the Panzl composition. Further, the proportions of mixed material are not stated, and the formation of mono calcium silicate by this process is doubtful. The Keller patent, No. 15,031, of 1890, does not include chamotte as a substance necessary to the success of the process. It is also thought impossible by this process to produce mono calcium silicate—the essence of the Panzl process. Attention is called by the defendant to many other patents. None contain the ingredients by which mono calcium silicate is formed; hence no disclosure of the Panzl invention is perceptible. Much stress is placed upon the Russell reissue patent, No. 11,882, dated November 15, 1892, which relates to improvements in the construction of a digester, and has for its object the prevention of injury to the interior of the shell by acid solution. The patent is not for a process for mixing or compounding ingredients so as to accomplish the object of the patentee. The specification, referring to the character of the material used to resist acid fluids, speaks of Portland cement made plastic with water, and also refers to "other cement-like materials or mixtures having similar properties or characteristics, * * * such as the ordinary cement mixtures, sand and Portland cement, sand and tar, and the like." The ingredients specified are not the equivalent to complainant's. Their admixture does not permit the formation of mono calcium silicate. When compounded it is adhesive and acid-resisting, but it does not possess the characteristics of an acid-proof lining. It will not be fruitful to analyze other prior patents claimed by the defendants to anticipate. It is true, as already remarked, the materials were not discovered by Panzl, and all of them are useful in other fields and processes. But the identical composition in the proportions stated is new. A useful function hitherto unknown is supplied to the art.

The infringement of the patent in suit is apparent from an examination of the record. The analysis of parts of the specimens of defendants' lining which were obtained from the defendant corporation by the witness Baker shows that their composition contained the same ingredients as the Panzl process, namely, hydraulic cement, chamotte, silicious material, water, and silicate of soda. It is practically admitted by defendants' witness Cullen that diluted silicate of soda, cement, sand, chamotte powder were used to compound the materials for defendant's lining. He denies using crushed quartz, but the testimony of the witness Baker shows that a specimen of this ingredient was obtained by him from the defendant corporation during the progress of the work. This would seem to be corroborated by Dr. Endemann's analysis. Referring again to the patent, it will be observed that the proportions of the compounded materials may be moderately varied. There was used by defendants a similar quantity of cement and a larger quantity of silicious material and of chamotte than is set forth in claim 3. That the exact proportions were not used is immaterial. It is enough that the compounding or mixing of the different materials was substantially in the proportions made known to the public by the patentee. My conclusion is that the defendant corporation has used the complainant's process for the express purpose of lining a digester or vessel; that is, it has used the ingredients specified in claims 1 and 2, and also used said materials substantially in the proportions enumerated in claim 3.

The next point in controversy arises out of the joinder as defendants of various alleged infringers. The bill charges a conspiracy between the defendants, several of whom were former employés of the patentee. Complainant claims that each of the defendants should be enjoined from further infringement of complainant's patent. Defendants Webb and Cullen acted solely in the capacity of agent for the defendant corporation in purchasing the necessary materials for mixing and in directing the work, and were not specially interested, except to receive compensation for their services. Though Cullen had prior knowledge of the Panzl process, and himself claims to have invented the process by which defendants' digester was lined, I am nevertheless of the opinion that the bill should be dismissed as to him and the other individual defendants. The record is devoid of establishing a conspiracy between defendants to wrong the complainant, and the defendant corporation is not charged with insolvency. Young v. Foerster (C. C.) 37 Fed. 203; Consolidated Fastener Co. v. Columbian Fastener Co. (C. C.) 79 Fed. 795; Green v. Buckley (C. C.) 120 Fed. 955.

A decree may be entered restraining the defendant corporation and for an accounting, and dismissing the bill as to the remaining defendants.

## On Application for Rehearing.

### (October 24, 1904.)

The Russell patent broadly covers a homogeneous digester lining. The decision of the court is not limited to the materials employed, but

apparently includes all cementitious mixtures known to the art. On this subject the language of the court is as follows:

"And we think, upon principle and authority, that Russell, having discovered that cement material generally possesses the qualities required for his conception of a homogeneous digester lining, should not be limited to such materials in the class of cementitious mixtures as he had chemically and commercially isolated as individuals, but that his claims and descriptions should be construed as including all cementitious mixtures which ordinary skilled practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art without invention."

It may fairly be presumed that the Commissioner of Patents, in granting the patent in suit, believed that the ingredients specifically named in the specification and the process of mixing the same were within the realm of patentability, and accordingly that it contributed something new and useful to the art. There being no sufficient proof to the contrary, the presumption of validity to which the patent is entitled is not overcome by the defendant's evidence. On the contrary, the proofs show that the improvement produced an absolutely acid-proof lining, and one that would permanently withstand the influences of corrosive substances. The Russell patent is also for a protection to the iron from the corroding influences of the acid, but it is not pretended that the protection is permanent. Whether Panzl in his process includes ingredients claimed by Russell need not here be decided. As was said in Cochrane v. Deener, 94 U. S. 787, 24 L. Ed. 139, in speaking of the fact of prior process patents:

"His invention and his patent are equally entitled to protection from infringement as if they were independent of any connection with them."

The petition for reargument is denied.

The petition to reopen the case for the purpose of taking additional testimony to show that the ingredient chamotte, used by the defendant in its digester, contained simply crushed fire brick, is also denied, on the authority of Pittsburgh Reduction Co. v. Cowles Electric Smelting & Aluminum Co. (C. C.) 64 Fed. 125; Wilson v. Freedley (C. C.) 129 Fed. 835; Rose v. Stephens & Condit Transp. Co. (C. C.) 19 Fed. 808.

So ordered.