## BEER v. WALBRIDGE et al.

### (Circuit Court of Appeals, Second Circuit. February 28, 1900.)

### No. 90.

**1.** PATENTS—INVENTION—DETERMINATION OF QUESTION ON DEMURRER.

Whether a device involves invention is a question of fact, and one upon which judicial minds may reach different conclusions in very simple cases. Hence, when a bill for infringement of a patent adds to the presumption of invention arising from the granting of the patent by allegations of the commercial success and extensive use of the patented article, and the prior art, so far as a court can take judicial notice of it, does not disclose a similar device, the patent should not be declared void on its face for obvious lack of invention, except in plain cases.

**2.** SAME—FIREPROOF FABRICS.

The Beer patent, No. 290,837, for a fireproof fabric, composed of a sheet woven of asbestus sewed to a backing of canvas or other strong material, and calendered so as to press the projecting fibers of the asbestus down over the seams to protect the threads from the effects of fire and heat, is not so obviously lacking in invention that it can be declared void on its face.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Geo. L. Lewis, for appellant.

A. Parker Smith, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The court below sustained a demurrer to the bill of complaint upon the ground that the patent of which infringement was alleged was invalid upon its face for want of novelty, and thereupon dismissed the bill. The patent was granted December 2, 1883 (No. 290,837), to John S. Beer, for a fireproof fabric, and the second claim reads as follows:

"(2) A compound fireproof fabric, composed of a sheet woven of asbestus, and a backing of canvas or other strong material secured to the sheet of asbestus by sewing, substantially as set forth."

The specification contains the following statements:

"The object of this invention is to produce a strong and durable fireproof fabric, which is adapted to be used in the manufacture of various fireproof articles for personal wear and other purposes,—for instance, boots and shoes, gloves, aprons, and the like. Heretofore asbestus has been employed in various ways in the manufacture of fireproof fabrics, but these fabrics are not sufficiently strong and durable for the purpose for which my improved fabric is designed, and the articles manufactured from such fabrics soon lose their shape and become unfit for use."

The description of the invention is as follows:

"A represents a sheet of fireproof fabric woven of asbestus, and provided, if desired, with strengthening threads of wire or other suitable material, in a well-known manner. B represents a backing of canvas, or other strong cloth, secured to the fireproof fabric by numerous rows of stitching, which are preferably arranged to intersect, in the manner of quilting. The sheets, A and B, may be sewed together with fine wire; but for all ordinary purposes common

100 F.—30

thread will answer, because the thread becomes imbedded in the asbestus, and the projecting fibers of the asbestus will cover the thread and protect the same. In order to better protect the fabric, after the two sheets have been sewed together it is passed between a pair of pressing or calendering rollers, whereby the projecting fibers of asbestus are closed down over the seams. * * * In manufacturing these articles, the sheet of asbestus is arranged on the outside, or side exposed to the fire, and protects the backing from the fire, while the backing imparts the required strength and durability to the fabric."

The courts will take judicial notice of facts which are within common knowledge, including those relating to the arts and industries, and matters of science, and may refer to the dictionaries and encyclopedias for information, when necessary to go outside the record. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200. Knight's American Mechanical Dictionary, Appleton's Cyclopædia of Applied Mechanics, and the Encyclopædia Britannica (Ed. 1875), among other works, describe asbestus and the uses to which it has been applied. It appears that from remote times the article has been manufactured into cloth, and used in that form for various purposes. Woven into layers or sheets, or interwoven with other cloth fibers, it was a well-known article long anterior to the time of the alleged invention of the patentee. Practical obstacles, arising from the feeble consistency of the asbestus, have prevented its extensive use in the manufacture of fireproof goods, and it is stated in the American Cyclopædia (1873) that "asbestus fabrics are now a curiosity." So far as appears, it had never been stitched to a backing of cloth, or so treated that the fibers are superimposed over the stitches so as to protect them from the effect of fire or heat; and whatever merit resides in this mode of employing it is due to the efforts of the patentee. It would seem that but little inventive faculty would be involved in doing this, and very possibly it may appear that to do it was an obvious thing, and merely a matter of ordinary mechanical adaptation. But a patent carries with it a presumption of novelty, and the trained experts of the patent office have decided that what was done by the patentee arose to the dignity of an invention. Whether it was an obvious thing or not is a question of fact; and if it should appear that upon the introduction of the patented article it commended itself to the public, and was accepted as supplying what had long been wanted, and obtained an extensive sale and use, these facts might be decisive. According to bill of complaint, the invention has been introduced into public use, articles have been largely used embodying the invention, and it has made practically successful the use of asbestus fireproof cloth for the purposes suggested in the patent. In view of such authorities as Krementz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, the question whether or not a given improvement involves invention is one upon which judicial minds divide in very simple cases. In that case novelty was found to reside in making a stud or collar button by swedging a piece of sheet metal into the desired form, although the form was old, the process of swedging metal into any desired form was old, and the studs made in the same way, but more solidly, were likewise old. The patent was sustained because of the recognition by the trade of the practical merits of the stud. So, in this

case, where, so far as appears, it had never occurred to the many persons who were experimenting with asbestus fabrics that the sheets could be stitched to a solid backing, and the threads so imbedded in the fibers as to be impervious to fire, if it should be shown that the article was practically valuable and had created a new industry, the question of patentable novelty might well be decided in favor of the patent.

We are of the opinion that the case is one where evidence of the prior art and of the commercial value of the patented article may be persuasive that the patent is valid, and that the question is too doubtful to be decided upon the face of the patent.

The decree dismissing the bill is reversed, with costs, and with instructions to the court below to take such further proceedings in the cause as may be in conformity with this opinion.