BAKER v. F. A. DUNCOMBE MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. May 9, 1906.)

No. 2,328.

1. EVIDENCE — JUDICIAL NOTICE — PATENTS — INVENTION — MATTERS GEN-
    ERALLY KNOWN.
    On the question of invention, in a suit for infringement of a patent,
    the court will take judicial cognizance of facts of general knowledge
    or devices in common use which may be similar to or identical in
    principle with that of the patent.
    [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 4,
    23.]

2. SAME—INVENTION.

Applying an old process to a new use is not invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 31.]

3. SAME—PROCESS OF TREATING COFFEE.

The Baker patents, No. 726,812 and No. 736,346, each for a process of treating coffee and the product of such process, which consists of cutting or crushing the roasted coffee bean and winnowing the dust, chaff, and disengaged silver skin of the bean from the granulated product by means of an apparatus designed for the purpose and consisting of a hopper, crushing or cutting rolls, and a screen or sieve through and over which a blast of air is forced, are void for lack of invention, in view of the old and familiar use of the same process in the cleaning of grain, so long known and practiced that a court may take judicial cognizance of it.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 23.]

4. SAME—PATENTS—INVENTION—IMPROVED PRODUCT—PATENTABILITY.

Granulated coffee is not patentable as an article of manufacture merely because the process used may produce granules which are more uniform and attractive in appearance than those otherwise produced.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 15, 42, 44, 46.]

Appeal from the Circuit Court of the United States for Western District of Missouri.

John E. Stryker, for appellant.

George W. Groves and Vinton Pike, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a bill in equity to restrain the infringement of two United States patents, No. 726,812, dated April 28, 1903, and No. 736,346, dated August 18, 1903. They are each for a process of treating coffee, and also for the product of the process. The second or process claim of each patent is as follows:

"The process of treating coffee, which consists essentially in first roasting the coffee bean, whereby the body of the bean is rendered brittle, while the embedded silver skin remains relatively flexible; then breaking" (in one patent) and "cutting" (in the other patent) "the roasted bean and freeing the silver skin, and finally separating said skin from the broken" (or cut) "body of the bean."

The third or product claim of each patent is as follows:

"As a new article of manufacture, the roasted body of the coffee bean, granulated" (in one patent) and "cut into granules" (in the other patent) "and freed from the embedded silver skin."

The process, as described in the specification, consists of roasting and grinding the coffee bean, thereby rendering it brittle so as to disengage the silver skin which extends into the interior of the bean, and subjecting the product, consisting of granules of coffee dust and chaff, to a current or blast of air for the purpose of separating the dust and chaff from the coffee granules. The patentee specifies a form of apparatus to illustrate his invention in substance as follows: An upright structure having a chute or hopper at its upper end into which roasted coffee beans are poured. Immediately below this chute

or hopper are two crushing or cutting rolls, designed to crush or cut into granules the coffee beans as they fall by gravity out of the chute or hopper between the revolving rolls. Beneath these crushing or cutting rolls is a reciprocating or shaking screen or sieve, upon which the product of the crushing or cutting falls. While passing over this screen or sieve the product is subjected to a blast of air which carries off the dust and chaff, including the disengaged silver skin, leaving the granules of well-winnowed coffee to be discharged from the structure through the chute near the bottom.

Defendant claims that this process involves no patentable novelty, and introduced certain patents which it claims anticipated the patents in suit, or at any rate disclosed that the process was old. Serious objection was made at the trial below, and again urged before us, to any consideration of the prior patents on the ground that defendant's answer consists only of a general denial of patentable novelty and gives no notice of the patentees, the dates of their patents, and when granted, or other information as required by section 4920 of the Revised Statutes [U. S. Comp. St. 1901, p. 3394]. But, in the view we take of other questions, we have not found it necessary to consider or determine this question of practice. We have concluded that the process disclosed by the patents in suit, in the light of what we may take judicial cognizance, was old at the time plaintiff applied for his patents, and involved no original idea or inventive faculty within the meaning of the patent law. In Brown v. Piper, 91 U. S. 37, 42, 23 L. Ed. 200, a patent was involved for a process of freezing fish in a closed chamber by means of a freezing mixture. In disposing of the case the court says:

"Courts will take judicial notice of whatever is generally known within the limits of their jurisdiction; and, if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and reliable."

It held that a common ice cream freezer, of which, together with its process of operation, it would take judicial cognizance without pleading or notice under the statute, contained the principle of the patentee's invention and deprived it of patentable novelty.

In Black Diamond Co. v. Excelsior Co., 156 U. S. 611, 616, 15 Sup. Ct. 482, 36 L. Ed. 553, which involved a patent for an improvement in coal screens and chutes, the Supreme Court observes:

"Hoppers with chutes beneath them have been used for a dozen different purposes, but principally for grain elevators. * * * Indeed, these devices are so common that we think judicial cognizance may be taken of them"— citing Brown v. Piper; Terhune v. Phillips, 99 U. S. 592, 25 L. Ed. 293; King v. Gallun, 109 U. S. 99, 3 Sup. Ct. 85, 27 L. Ed. 870; Phillips v. Detroit, 111 U. S. 604, 4 Sup. Ct. 580, 28 L. Ed. 532.

In Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991, the Supreme Court held that two patents for grain-transferring apparatuses were wholly void on their face for want of patentable novelty. The case involved a stationary building, railway tracks, lifting apparatus, hopper, scales, and discharge spouts. The court, in holding the patents void, says: "We do not feel com-

pelled to shut our eyes" to facts so well known as those just enumerated, and the case was disposed of on a demurrer to the bill.

In Specialty Mfg. Co. v. Fenton Mfg. Co., 174 U. S. 492, 497, 19 Sup. Ct. 641, 643, 43 L. Ed. 1058, involving a patent for improvements in storage cases for books, the court observes:

"The employment of semicircular handholds or recesses, for more readily grasping the books, is such a familiar device in upright partitions for holding books that scarcely any banking or record office is without them, and the court may properly take judicial notice of their use long prior to this patent."

See, to the same effect, Fond Du Lac County v. May, 137 U. S. 406, 11 Sup. Ct. 98, 34 L. Ed. 714; Mahler v. Animarium Co., 49 C. C. A. 431, 111 Fed. 530; Westinghouse Electric & Mfg. Co. v. Union Carbide Co., 55 C. C. A. 230, 117 Fed. 495, 501.

In Appleton Mfg. Co. v. Star Mfg. Co., 9 C. C. A. 42, 60 Fed. 411, the Circuit Court of Appeals for the Seventh Circuit held that a patent for an improvement in the method of reducing corn in the stalk and separating the kernels, consisting of a cutter with feed rollers in front, a beater or thresher, a revolving screen or separator, and a shaking screen under it, all mounted in one frame, are void for want of invention, the device amounting merely to a new use of the old and well known devices.

In Brown v. Piper, supra, the Supreme Court, after quoting from the American Encyclopædia on the subject of "Freezing," says:

"Here the principle and substance of the appellee's claim are set forth as belonging to the general domain of knowledge and science."

In Beer v. Walbridge, 40 C. C. A. 496, 100 Fed. 465, the Circuit Court of Appeals for the Second Circuit says:

"The courts will take judicial notice of facts which are within common knowledge, including those relating to the arts and industries, and matters of science, and may refer to the dictionaries and encyclopædias for information, when necessary to go outside the record."

The process of these patents, so far as the separation of dust and chaff from the subject upon which the process operates is concerned, is and has been for a long time a familiar one in practice. The common winnowing or fanning mill discloses it. No different principle is involved in separating chaff from granules of coffee by a blast of wind than that involved in the old familiar process of separating chaff from wheat or oats by subjecting the grain to a gust or puff of wind, either by hand or by using the old fashioned winnowing mill. This is not only within our experience and observation, but is taught circumstantially in biblical and classical literature, in encyclopædias and lexicons:

"The oxen likewise and the young asses that ear the ground shall eat clear provender, which hath been winnowed with the shovel and with the fan." Isaiah xxx, 24.

"And as in sacred floors of barns upon corn-winnowers flies the chaff, driven with an opposite wind." Homer's Iliad, Book V, p. 73, Chapman's Translation.

Knight, in his American Mechanical Dictionary (volume 3, p. 2786), defines "winnowing machine" as follows:

"A machine in which grain, accompanied by chaff. dirt, cheat, cockle, grass seeds, dust, straw, and other foul [matter] either or all is subjected to a shaking action on riddles and sieves in succession, the while an artificial blast of wind is driven against it on and through the sieves, and as it falls from one to another."

The Century Dictionary defines it as follows:

"A machine for cleaning grain by the action of riddles and sieves and air blast; a fanning machine or fanning mill."

We are thus informed by sacred and profane history as well as by modern mechanical engineers and lexicographers, to all of which we may resort in the determination of what we may take judicial cognizance (Beer v. Walbridge, supra), that all of complainant's process, excepting his preliminary roasting of the bean, had been for a long time a well known and generally practiced method of separating wheat from its accompanying chaff. The new and analogous use to which the old and familiar process was put does not amount to invention. Slawson v. Grand Street Railroad Co., 107 U. S. 649, 654, 2 Sup. Ct. 663, 27 L. Ed. 576; Grant v. Walter, 148 U. S. 547, 556, 13 Sup. Ct. 699, 37 L. Ed. 552; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059. But it is said that the patentee combined with the old process the new feature of roasting the coffee bean to make it brittle so as to permit the effective operation of the grinding rollers and the separation of the silver skin from the granules. We do not regard this as an exercise of the inventive faculty. It amounts only to using the process on another subject. As the coffee bean could not be ground in its green state it was a most obvious conception to roast or otherwise dry it before attempting to grind it. The process as patented, including the preliminary roasting, was at best the application of the well known ancient and modern practice to new and strictly analogous uses; and, appropriating the language of Mr. Justice Blatchford in Aron v. Manhattan Railway Co., 132 U. S. 84, 89, 10 Sup. Ct. 24, 33 L. Ed. 272, its purpose "was to adapt well known devices [process] to the special purpose to which he contemplated their application. * * * Any competent mechanic * * * could have done this readily and successfully, upon the mere suggestion of the purpose which it was desirable to effect."

The claim of invention in the new article of manufacture, or the product of the process of the patents is likewise without merit. It may be that the particular machine employed to illustrate complainant's process, or the process itself, produces more evenly crushed or cut granules of coffee than other machines or processes. The coffee may look better or more attractive in the package, but this does not involve invention. It is only a change in the form or appearance of a well-known article of merchandise and is not patentable. Glue Co. v. Upton, 97 U. S. 3, 7, 24 L. Ed. 985; King v. Gallun, supra;

Cerealine Mfg. Co. v. Bates, 41 C. C. A. 341, 101 Fed. 272, 280; Sanitas Nut Food Co. v. Voigt (C. C. A.) 139 Fed. 551, 553.

The decree below dismissing the bill for want of equity was right, and is accordingly affirmed.