LANGE v. McGUIN et al.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

No. 1,601.

1. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—DETERMINING VALIDITY ON DEMURRER.

A patent for a process cannot be declared void on demurrer to a bill for its infringement, where what is described therein as a process is such a matter as under the law might be claimed and protected as a process if the patentee was in fact the first and true deviser thereof and if the devising required the exercise of the inventive faculty, because, in such case, if void, it must be so on account of matters of fact dehors the patent which can only be shown as a defense.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 528; Dec. Dig. § 310.*]

2. PATENTS (§ 310*)—DETERMINING VALIDITY ON DEMURRER.

If a bill for infringement of a patent in and by its own averments states a prima facie case, it cannot be overthrown by the chancellor on demurrer merely on the ground that he judicially knows of facts which would support an answer, but his judicial knowledge must go farther and be so broad and all-embracing that he can properly hold that no facts exist that would tend to controvert the supposed answer and support a replication and the bill.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 528; Dec. Dig. § 310.*]

3. PATENTS (§ 328*)—VALIDITY—PROCESS FOR EXTRACTING SPIRITS FROM USED CASKS.

The Lange patent No. 893,253, for a process for recovering spirits from internally charred liquor casks which have been once used, which consists of charging the casks with a small quantity of water, agitating the same from time to time, and permitting the cask to stand for a sufficient time to secure a mixture of the water and alcohol by diffusion, and then drawing off and distilling the contents, is not void on its face.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by Leopold Lange against Michael F. McGuin and others. Decree for defendants, and complainant appeals. Reversed.

Appellant filed his bill in the usual form, alleging infringement of patent No. 893,253, July 14, 1908, to appellant, for a "process for recovering spirits from internally charred liquor casks which have been once used."

The claims, and the explanation thereof given in the specification, read as follows:

"In carrying out my process, I first charge said empty casks with a small quantity of water, preferably from two to five gallons, and close the cask, thereafter agitating the water by movement of the cask, such, for example as rolling, upending or otherwise, so that the contained water will thoroughly saturate the interior of the cask. After this is done, I permit the charged cask to stand for a period of time, depending upon the condition of the cask, at intervals agitating the contents as before. I have secured very good results by letting the charged cask stand a period of time, approximately, 72 hours, agitating the same at intervals as stated. In freshly emptied casks, however, this time may be shortened considerably. After letting the casks stand, as stated, I then draw off the contents and redistill the same in the well-known manner to recover the spirits. This procedure, I usually continue a plurality of times generally running from 3 to 5, according to the condition of the cask, and I find that by this process, substantially all of the contained spirits is recovered, the total amount recovered sometimes equaling nearly a gallon to a cask and seldom running below one-half gallon. * * *

"My understanding of the process is, that the water being of greater specific gravity than the spirits, and aided by a well-known affinity of alcohol for water, seeks out the spirits in the cells of the charred interior and displaces the same, the water filling the cell and the spirits commingling with the contained water in the cask. * * *

"1. The herein described process of recovering the cellularly contained spirits from internally charred liquor casks, comprising, first, charging said casks with a small quantity of water and after closing the casks, agitating the water by movement of the cask, second, letting the charged cask stand a period of time sufficient to secure a mutual solution, by diffusion, of the water and alcohol, at intervals agitating the contents thereof as before, and third, drawing off the contents and redistilling the same to recover the spirits therefrom.

"2. The herein described process of recovering cellularly contained spirits from an internally charred liquor cask, which consists (1) in charging said cask with a comparatively small quantity of water, and, after closing the cask, agitating the contents by the movement of the cask, (2) letting the charred cask stand for a period of time sufficient to secure a complete mutual solution, by diffusion, of the water and alcohol, at intervals agitating the contents, as before, (3) drawing off the contents, (4) repeating the steps a plurality of times, and (5) finally distilling the aggregate quantity of fluid recovered from the several charges.

"3. The herein described process of recovering the cellularly contained spirits from internally charred liquor casks, comprising, first, charging said casks with a comparatively small quantity of water and after closing the cask, agitating the water by movement of the cask, second, letting the charred cask stand a period of time sufficient to secure a mutual solution, by diffusion, of the water and alcohol, at intervals agitating the contents thereof as before, and maintaining an equable temperature of the contents at between 60 to 80 degrees Fahrenheit, and third, drawing off the contents and redistilling the same to recover the spirits therefrom."

A demurrer was sustained on the ground that, by reason of matters appearing on the face of the patent and matters of which the court would take judicial notice, the patent was void.

By leave of court appellant filed an amended bill. The amendments we notice consisted of, first, the file wrapper and contents, which exhibited the examiner's references to the prior art in support of his disallowance, the examiner's further consideration resulting in allowance, and interference proceedings decided in appellant's favor; and, second, prior patents, which showed that for many years preceding 1908 pressure and heat had been employed in

processes "for recovering spirits from internally charred liquor casks which had been once used."

On exceptions these amendments were stricken out. The demurrer was renewed and sustained; and thereupon a decree was entered dismissing the bill for want of equity.

In argument, besides the common household processes of soaking and rinsing to clean utensils, references were made to the following:

Watt's Dictionary of Chemistry: "Alcohol has a very strong affinity for water and mixes with it in all proportions."

Century Dictionary: "Diffusion: The gradual and spontaneous molecular mixing of two fluids which are placed in contact one with the other. It takes place without the application of external force and even when opposed by the action of gravity. It is explained by the motion and mutual attraction of the molecules of the two fluids. Diffusion is most rapid and marked between gases, but it is also an important phenomenon of liquids.

"Diffusion of liquids, or diffusion through each other, occurs when two liquids that are capable of mixing, such as alcohol and water, are placed in contact, even in spite of the action of gravity. It is closely related to the phenomenon of exosmosis and endosmosis, which takes place when liquids are separated by a porous diaphragm."

Webster's Dictionary: "Osmose: The tendency in fluids to mix or become equally diffused, when in contact. It was first observed between fluids of differing densities, and as taking place through a membrane or an intervening porous structure. The more rapid flow from the thinner to the thicker fluid was then called endosmose, and the opposite, slower current exosmose. Both are, however, results of the same force. Osmose may be regarded as a form of molecular attraction, allied to that of adhesion."

Report of United States Commissioners to the Paris Exposition of 1867, published by the United States government in 1869: "Extraction of Sugar by Diffusion: This process has been brought before the public at the Paris Exhibition in the form of a collection of specimens illustrating the entire manipulation as applied to sugar cane, and the results obtained in actual, though not as yet in completely organized, practice. The collection of Mr. Minchin's samples is placed in the Indian department close to the other exhibits of sugar from India, with which it contrasts very remarkably in many respects. We may repeat here wherein Mr. Robert's process consists. The plants are cut up into thin square slices by means of very sharp and clean cutters so as not to destroy the cellular structure of the plant, but only to produce a large surface on which the liquids employed for extraction can act. The slices are filled into large vessels and covered with water at an elevated temperature, the precise temperature used varying with the circumstances of the case. The water in contact with the slices of the beet root or cane extracts from the cells of the plant a certain proportion of sugar by the natural and spontaneous process of endosmosis and exosmosis—a process which is known to take place with all organic membranous and cellular structures, and which consists in an exchange of all liquids placed in contact with the membrane at opposite sides. The contents of an organic cell surrounded by water are in this manner mixed or exchanged with the outer liquid, so that a cell containing a solution of sugar, and surrounded by pure water, will after a certain time contain a weaker saccharine solution, while the water outside will have taken up some of the sugar contained in the cell. If carried to the extreme, the liquids will exchange contents until the same mixture or solution will exist both inside the cell and outside."

Century Dictionary: "Grog, v. t.:—2. To extract grog from, as the wood of an empty cask, by pouring hot water into it. (British excise slang.)" "Grogging, n.: The act of extracting spirits from empty casks with hot water."

John W. Hill, for appellant.
Albert H. Adams, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). The office of a general demurrer to a bill is to test the legal sufficiency of the averments to state a good cause of action in equity. Of course, a demurrer may be addressed to a bill for infringement of a patent as well as to any other bill. And, though the bill be in due form and complete in all its parts, yet, if the exhibited patent be inevitably void either on its face or by reason of matters of universal knowledge, the demurrer should be sustained.

Thus, if a design patent claims a monopoly, not merely of the particular arrangement of parallel lines pictured and described in the specification, but also of every variety of arrangement that can be effected by the use of parallel lines, such a claim is void, because it is beyond the legal scope of a design patent. N. Y. Belting Co. v. N. J. Rubber Co., 137 U. S. 445, 11 Sup. Ct. 193, 34 L. Ed. 741.

Again, if an inventor devises a machine which in a process of manufacture does better, quicker, and cheaper work than had been done in the same process previously carried out by hand, he cannot hold a process patent, for the reason that the advantages of a better product more quickly and cheaply made are the result, not of a new or improved process, but of the superiority of machine work over hand work in the same steps of manufacture. Risdon Locomotive Works v. Medart, 158 U. S. 68, 15 Sup. Ct. 745, 39 L. Ed. 899.

So, also, if concededly old elements are brought together, not in the co-operative union of a true combination, but in the forced relationship of a mere aggregation, a patent therefore is void, because a patent cannot lawfully be issued for an aggregation. Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991.

In each of the above-cited instances the patent was void on its face as a matter of law. No amount of testimony could have affected the result, for testimony is powerless to enlarge or diminish the statutory warrant for the issuance of patents. But here the patent is not void on its face as a matter of law. What is described in the patent as a process is such a matter as under the law might be claimed and protected as a process, if the patentee was in fact the first and true deviser thereof, and if the devising required the exercise of the inventive faculty. Therefore, if the patent in suit is void, it must be so on account of matters of fact dehors the patent—defenses of anticipation and want of invention as matters of fact.

Bills in patent causes and demurrers thereto are not so unique that they are exempt from the general principles and rules of equity pleading. And therein it is not the province of a demurrer to speak of matters beyond the bill. Of course, every bill is written against the background of common knowledge; and in that view a demurrer may be said to invite the chancellor to take judicial notice of the background. But if a bill, in and by its own averments, states a prima facie case, that case cannot properly be overthrown by the chancellor merely on the ground that he judicially knows of facts that would support an answer. His judicial knowledge must go farther, and be so broad and all-embracing that he can properly hold that no facts exist that would tend to controvert the supposed answer and support a replication and the

bill. This is so because, if such facts exist, the complainant is entitled to a hearing where he can present and argue the facts, and such a hearing cannot be had on demurrer to the bill.[1]

Respecting the defense of anticipation, no facts of alleged common knowledge have been brought to our notice which inevitably establish that the patented "process for recovering spirits from internally charred liquor casks which have been once used" had ever been described or employed by any one before appellant. The "grogging," of British excise slang, started with pouring hot water into the cask. Where it continued and ended we do not know. Appellant's very process may have been carried out, but the dictionary does not say so. In the common household processes of soaking and rinsing to remove grease and dirt from vessels, we do not conclusively see an application, as in appellant's process, of the natural principle of diffusion of liquids by molecular attraction operating regardless of gravity.

Respecting the defense of want of invention, we might think that, in view of the common facts above stated, of the well-known law of diffusion of liquids, and of the application of that law to the extraction of sugar from cane as early as 1867, the application in 1908 of the same law to the extraction of liquor from the cells of charred wood was not an inventive act. Grant that that is a strong and persuasive showing; but it is a showing of the kind that ordinarily must be made by evidence in support of an answer—that must always be so made except in the extremely rare case where judicial knowledge extends to the point of knowing that no competent and relevant evidence in support of the patent's presumptive validity can be produced. The Patent Office is conducted by experts who have access there to almost endless words and things respecting the prior stages in all the arts. Suppose the records of prior efforts in the art of extracting liquor from the charred interior of casks should disclose that, although the process of extracting sugar from cane by endosmosis and exosmosis was known in 1867, yet in this art such a process had never been suggested or used by any one before appellant, but that radically different, slower, less efficient, more expensive processes had been used, while there had been a succession of unsuccessful efforts to find a quicker, cheaper, more efficient process—would not such evidence be competent in rebuttal of defendants' case? Clearly, on issues joined, it would be error to reject it. How much of such evidence was before the Patent Office experts when they made their finding of fact respecting invention we do not know, for it is not a matter of common knowledge, but of special information. That there was any such evidence we do not properly know, for, of course, the Circuit Court was right in striking out the file wrapper and contents and the prior patents as amendments

[1] See American Fibre-Chamois Co. v. Buckskin Fibre Co., 72 Fed. 508, 18 C. C. A. 662; Caldwell v. Powell, 73 Fed. 488; 19 C. C. A. 592; Higgin Mfg. Co. v. Scherer, 100 Fed. 459, 40 C. C. A. 491; Beer v. Walbridge, 100 Fed. 465, 40 C. C. A. 496; Milner Seating Co. v. Yesbera, 111 Fed. 386, 49 C. C. A. 397; Chinnock v. Patterson Tel. Co., 112 Fed. 531, 50 C. C. A. 384; General Electric Co. v. Campbell (C. C.) 137 Fed. 600; Southern Plow Co. v. Atlanta Agric. Works (C. C.) 165 Fed. 214; Neidich v. Edwards (C. C.) 169 Fed. 424; Westrumite Co. v. Com'rs Lincoln Park (C. C. A.) 174 Fed. 144.

to the bill (it still being improper to plead evidence); but it is enough to require the overruling of a demurrer for want of invention in fact that we are unable to find conclusive ground for saying in advance that no competent evidence can be produced to aid the patent's presumptive validity.

The decree is reversed, with the direction to overrule the demurrer.