WARNER INSTRUMENT CO. v. STEWART & CLARK MFG. CO.

(Circuit Court of Appeals, Seventh Circuit.   January 3, 1911.)

No. 1,716.

1. PATENTS (§ 26*)—INVENTION—COMBINATION OF OLD ELEMENTS.

The mere bringing together of old parts and allowing each to work out its own old effect, without producing some new machine or product, is not invention; but, to render a combination of old elements patentable, it must produce a different force or effect or result from that given by the parts separately.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 27; Dec. Dig. § 26.*

Patentability of combination of old elements as dependent on results obtained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

2. PATENTS (§ 328*)—INVENTION—DRIVE GEARING FOR SPEEDOMETER.

The Cadman patent, No. 837,188, for a drive-gearing for automobile speed indicating mechanism, the essential feature of which is the swivel-joint connection of the flexible shaft which drives the speed indicator with the drive-gearing attached to a front wheel, to prevent the bending or twisting of the shaft with the rocking and turning of the wheel, is void for lack of invention in view of the prior use of similar devices, operating on the same principle, for the same purposes, in dental machines, shearing machines, etc.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by the Warner Instrument Company against the Stewart & Clark Manufacturing Company.   Decree for defendant, and complainant appeals.   Affirmed.

Samuel E. Darby, for appellant.
Charles S. Burton, for appellee.

Before GROSSCUP and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

CARPENTER, District Judge.   This suit was brought by the appellant to restrain the infringement of patent No. 837,188, issued to A. B. Cadman November 27, 1906, for an invention "in drive-gearing for automobile speed indicating mechanism."   At the final hearing in the Circuit Court, where the bill was dismissed for want of equity, the complainant limited his prayer for relief to claims 9, 10, and 11, as set forth in his application.   These claims are as follows:

"9. The combination with a wheel having a gear, a pivotally-mounted steering-knuckle upon which said wheel is journaled to rotate, drive-gearing mounted upon said steering-knuckle and arranged to be driven by the gear on said wheel, a transmitting-shaft driven by said drive-gearing, and cou-

nections between said transmitting-shaft and said drive-gearing, whereby said drive-gearing may partake of the rocking or swinging movement of the steering-knuckle without bending or twisting said transmitting-shaft.

"10. The combination with a wheel having a gear, a pivotally-mounted steering-knuckle upon which said shaft is journaled to rotate, drive-gearing mounted upon said steering-knuckle and arranged to be driven by the gear on said wheel, a transmitting-shaft arranged to be driven by said drive-gearing, a sheathing for said transmitting-shaft, and connections for permitting said drive-gearing to partake of the rocking or swinging movements of the steering-knuckle without transmitting the same to said sheathing.

"11. The combination with a wheel having a gear, a pivotally-mounted steering-knuckle upon which said wheel is journaled, a gear-casing carried by said steering-knuckle, drive-gearing arranged within said casing and adapted to be driven by the gear on said wheel, a transmitting-shaft arranged to be driven by said drive-gearing, a sheathing for said transmitting-shaft, and connections between said sheathing and casing to permit the latter to partake of the rocking or swinging movement of the knuckle without transmitting such movement to said sheathing."

The development of the automobile has brought with it a train of accessories, the manufacture of which has become an important part of the industrial activity of this country. Among these is the speed indicator. Experience has shown that it is necessary to operate automobile speed indicating devices through gear connections from one of the front wheels of the vehicle. The front wheels ordinarily are not power driven, receiving their rotary movement through friction with the ground, and consequently are not subjected to the slipping of the power-driven wheels which often occurs when starting up with a heavy load, or on wet or greasy streets, or when the brakes are applied. The slipping of the shaft or wheel which drives the speed indicator naturally renders the reading of the instrument inaccurate. This indicator is mounted inside the car, at some point where it can be observed readily by the driver, and usually is operated by mounting a gear-wheel on the front wheel of the vehicle concentric with the axis of the stub axle about which the wheel turns. With this gear-wheel there meshes a pinion, carried by a mount supported on the steering-knuckle in such relation as to maintain always the pinion and gear-wheel in mesh with each other, notwithstanding the rocking or swinging movements of the knuckle, resulting from steering the machine. The pinion is connected through a flexible shaft with the speed indicator. It becomes necessary, with this arrangement, to accommodate the rocking or swinging movement of the front wheels in steering the machine without impairing the proper drive connection of the gearing which transmits the rotary movement of the wheel to the speed indicator.

As a result of the constant swinging or rocking movement of the steering-wheel, the flexible shaft leading to the indicator on the car becomes bent back and forth. This bending causes a crystallization and rapid wearing out or a breaking of the shaft or its protecting sheath.

The first means devised to obviate this difficulty was to reinforce the sheathing, probably because reinforcement was cheaper than any other method; but this, it seems, did not suffice, although at the present time many speedometers are connected with the wheel by means of a straight drive flexible shaft with the reinforced sheath.

In this state of the art, Cadman, as appears from the specifications in his patent, sought "to provide a drive-gearing of such construction and arrangement as to enable the steering-knuckle to be rocked or swung in the steering of the car without imparting to the transmitting-shaft a twist or turn, or without subjecting the protecting sheathing therefor to undue rubbing, chafing or wear, thereby avoiding any possibility of inaccuracy in the reading of the instrument through the bending or twisting of its driving-shaft, and also avoiding rapid wear upon the protecting sheathing of such shaft."

It will be unnecessary to consider in detail the drawings and specifications of the inventor to determine how he intended to carry out his idea. Counsel for appellant, in his original brief, states:

"It will be seen that the feature which in the operation of the device, and in its association and co-operative relation with respect to the other parts of the device, effects the desired objects and purposes of the inventor, and which overcomes the defects and objections of the prior devices, *is the swivel-joint connection of the flexible shaft which drives the speed indicator.* with a drive-gearing so mounted and arranged upon and with reference to the steering-knuckle, the steering-wheel, and associated parts that the steering-knuckle may freely rock or swing to accomplish the steering of the machine without imparting any material coincident bends to the flexible shaft."

The swivel-joint connection on a power shaft is an old device. As early as January 18, 1870, patent No. 98,864 was issued to G. F. Green, wherein it appears that the object of his invention was "to construct a universal joint which will be capable of transmitting motion from a driving shaft in any combination of machinery, at any desired angle, and which may either be set or held in any position, or allowed to change the angle while in motion, as the case may require." Since that time a number of patents have issued for improvements on such universal joints. Similar devices have been used with flexible shafts on dental engines, horse clipping machines, sheep shearing machines, and a great many other mechanical contrivances, and the flexible joint in all of these performs exactly the same function that it performs in the Cadman patent.

The problem which confronted the trade in connection with the speedometer was how to transmit the power from the steering-wheel to the speed indicator without a swinging or rocking motion being given to the flexible shaft whenever the steering-wheel was turned from side to side.

This problem involved the transmission of power from a rocking wheel to a stationary indicator. The problem which was met in the case of the dental machines and the shearing machines was the transmission of power from a stationary source to a moving operating point. Clearly it did not require inventive genius to transfer the universal or swivel joint from one end of the shaft to the other.

It is admitted by the appellant that the operation of speedometers by means of a flexible shaft is not new, but it is claimed that:

"Never before the Cadman invention had such a transmission gearing, so mounted, provided any means which would enable the drive-gearing of the indicating instrument to partake of the rocking or swinging movements of the steering-knuckle in steering the car, without imparting bends to the flexible shaft of the driver gearing connection."

All that Cadman did was to employ a universal joint of the construction shown in the Stone, Smith, or Seeger, and Dedrick patents, and in the Jones, Hodgson, and Parrish, and Smith structures. The appellant claims, however, that none of the workers, prior to Cadman's invention, ever thought of making an application of the old and well-known universal joints to automobile speed indicators.

The mere bringing together of old parts and allowing each to work out its own old effect, without producing some new machine or product, is not invention. It is necessary always to determine whether the conception of a combination of old parts results from the intuition of the inventor as distinguished from the skill of the mechanic. A combination of old elements to be patentable "must produce a different force, or effect, or result in the combined force or processes from that given by their separate parts. There must be a new result produced by their union; if not, it is only an aggregation of separate elements." Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719.

If, in the art relating to the transmission of power, the flexible shaft had never been used before in connection with a universal or swivel-joint, appellant's contention would be sound. Here, however, we have merely a question of the transmission of power from a given source to a point varying to suit the convenience of the operator, a question which long since has been answered. In fact, the power shaft of the dental device or the shearing device could have been used to transmit the power from the front wheels of an automobile to the indicator with the same result as Cadman's patent. It may be that certain purely mechanical changes would have to be made owing to the use to which the automobile is put, such as making the joints dustproof and perhaps stronger; but the power none the less would be transferred from the wheel to the indicator "without imparting the rocking movement of the wheel to the flexible shaft." How, then, can it be deemed invention to conceive the idea of using the power transmitting device of the dental and shearing machines to indicate the speed of automobiles?

In Voightmann v. Weis Ridge Cornice Co., 148 Fed. 848, 78 C. C. A. 538, the court said:

"It is not invention to discover that the principle of an ice cream freezer can be employed to preserve fish. Brown v. Piper, 91 U. S. 37 [23 L. Ed. 200]. It is not invention to take a coffee mill and patent it as a mill for grinding spices. Potts v. Creager, 155 U. S. 597 [15 Sup. Ct. 194, 39 L. Ed. 275]. It is not invention to use the process of an ordinary winnowing mill to separate the silver skin from ground coffee (Baker v. Duncombe Mfg. Co., 146 Fed. 744 [77 C. C. A. 234]), and many cases there cited. It is not invention to adapt to an ordinary windmill the combination of an internal toothed spur wheel with an external toothed opinion, for the purpose of converting a revolving into a reciprocating motion. All that Martin, the patentee in that case, did, in the language of the Supreme Court (Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 493 [20 Sup. Ct. 708, 44 L. Ed. 856]) was 'to apply it (the combination) to a new purpose in a machine where it had not before been used for that purpose.'"

The true test is whether Cadman produced a new result or an improved method of producing the old result. Clearly he did not. At the most he applied an old and well-known combination of elements,

each one performing its original function, to a new use. Such was not invention.

Appellant claims that Cadman's idea was invention because it did not suggest itself for nearly three years to those skilled in the art. In Warren Webster & Co. v. C. A. Dunham Co., 181 Fed. 836, where 11 years of experimentation had passed before the patent issued, Judge Sanborn, speaking for the Circuit Court of Appeals for the Eighth Circuit, in disposing of a similar contention, said:

"These arguments are persuasive. They have been carefully considered. But the application of an old device or combination to a new use is not in itself an invention, or capable of protection by a patent. If the relation between the two uses is remote, and the old device or combination produced a new result by virtue of its new application, that application may constitute invention. Where a machine or a combination is discovered in a remote art, where it is used to perform a different function, and where it was not designed and was not apparently suitable to accomplish the thing desired, the application of it with proper mechanical adaptation to a new use is often the result of the exercise of the inventive faculty and may be protected by patent. But the thought that an existing machine or combination, discovered in the same art or one nearly analogous to it, designed and suitable to perform a similar function, may be used or adopted to accomplish the desideratum, is not the product of inventive genius, but the result of the application of the skill of the mechanic to the subject under consideration. It is only when the new use is so recondite and remote from that to which the old device and combination has been applied, or for which it was conceived, that its application would not occur to the mind of the ordinary mechanic skilled in the art, seeking to devise means to perform the desired function, with the old machine or combination before him, that its conception may rise to the dignity of invention."

We are of the opinion that the Cadman device did not involve invention. Accordingly, the decree of the trial court dismissing the bill of complaint for want of equity is affirmed.

Affirmed.