COLORADO TENT & AWNING CO. et al. v. PARKS et al.

(Circuit Court of Appeals, Eighth Circuit.   March 4, 1912.)

No. 3,541.

1. EVIDENCE (§ 5*)—SUIT FOR INFRINGEMENT—ISSUES AND PROOF.
    The public is an interested party in every patent case, and the validity of a patent when put in issue must always be determined, whether the parties desire it or not; nor is the court limited on such issue to the evidence taken, but may take judicial cognizance of facts of general knowledge or devices in common use.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 4; Dec. Dig. § 5;* Patents, Cent. Dig. § 543.]

2. PATENTS (§ 328*)—NOVELTY—VENTILATING TENT.
    The Parks patent, No. 777,531, for a tent cottage provided with ventilating means, consisting of openings at the bottom and a ventilating box or passage on the top, discloses no new principle nor means not previously known and in common use in various structures in substantially like form, and is void for lack of patentable novelty.

Appeal from the Circuit Court of the United States for the District of Colorado.

Suit in equity by John R. Parks and Richard R. Parks against the Colorado Tent & Awning Company and others.   Decree for complainants, and defendants appeal.   Reversed.

Julian C. Dickinson and Thomas E. Watters, for appellants.
Gobin Stair (H. A. Calvert, on the brief), for appellees.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge.   John R. and Richard R. Parks, owners of patent No. 777,531, applied for March 18, 1904, and issued December 13, 1904, for alleged improvements in tent cottages, brought this action

against the Colorado Tent & Awning Company and Robert S. Gutshall for alleged infringement of claims of their patent. The defendants in their answer among other things denied patentable novelty. In other words, they denied that John R. Parks, the alleged inventor, was the original and first inventor of the improvements of the patent and affirmatively averred that Robert S. Gutshall was the original inventor thereof and that he secured a patent for the same, which was applied for September 12, 1903, dated February 2, 1904, and numbered 751,-392, under which the defendants were operating. They claimed that all complainants did was to include and embody in their claims the entire invention of the Gutshall patent without change in form or arrangement, but with two additional elements which constituted no patentable novelty.

Neither the pleadings nor the proof make any disclosure of the prior art relating to tent making, and no anticipation is pleaded or suggested except the Gutshall patent of 1904. The controversy, so far as the pleadings, proof, and argument of counsel are concerned, is limited to the one question whether Parks or Gutshall was the original inventor.

Claims 1 and 2 of the Parks patent are fairly characteristic of all and disclose the invention, if any. They read as follows:

"(1) A structure of the class described provided with sheeting walls extending a portion of the distance from the floor to the eaves, having hinged parts adapted to swing outwardly in the lower part of the sheeting, forming ventilating openings, and inwardly-swinging parts located on the inside of the structure opposite said ventilating openings, and means for controlling the inwardly-swinging parts to support them in front of said openings to prevent a direct draft of air from the outside to the interior of the tent.

"(2) In a structure of the class described, the combination of the roof proper and a parallel fly supported above the roof whereby the space between the roof and fly is uniform, and a ventilating box located in the central·portion on the top of the structure and having a ventilating passage open to the, atmosphere at its upper extremity and to the tent at its lower extremity, two exteriorly-located members for controlling the opening at the top of the box, the said members being hinged at the top and inclined downwardly therefrom on opposite sides to correspond or approximately correspond with the pitch or inclination of the fly, the said members being adapted to open outwardly, the said passage communicating directly between the top and bottom openings with the upper extremities of the space between the fly and the roof proper, whereby a circulation of air is permitted from the eaves of the structure on both sides upwardly through the ventilating passage of the box, thereby inducing an upward air current from the inerior of the tent."

The patentee in his specification says his object is "to provide a structure of this class which shall be suitable to live in during all seasons of the year and which shall at the same time be adapted for perfect ventilation, whereby the foul or impure air may be removed from the interior of the structure as quickly as possible."

The principle of the invention is therefore a particular method of ventilation, and a fair idea of it appears from figure 2 of the drawings of the patent which shows a vertical longitudinal section taken transversely through the ventilating mechanism located in the top of the structure and the openings near the floor and other elements described

later in this opinion by the reference letters of the drawing. It is here reproduced:

From the drawings interpreted in the light of the description, the invention may be summarized thus: In a structure with side walls of sheeting and of canvas having a double roof, a hole or holes near the floor so opening and controlled as to permit pure outside air to enter the interior of the room, be deflected upwardly and pass out through another hole at the ridgepole of the structure also subject to control. The means for accomplishing this most manifest desideratum are, in the accurate and critical language of the patent solicitor, thus described:

"The sheeting portion of the wall near the floor of the structure is provided with parts $B'$, hinged at the bottom, as shown at $B'$, and adapted to swing outwardly, forming an opening which is preferably covered with wire-mesh material. These hinged parts $B'$ may extend entirely around the wall of the structure, as indicated in the drawings. Opposite the ventilating openings, adapted to be closed by the parts $B'$ and hinged to the structure on the inside, as shown at $B^4$ are inwardly-swinging parts $B^5$, which are capable of adjustment whereby they may be locked at any desired inclination. * * * To the top of the upright parts $A$ are attached horizontal parts $E$, to which the lower extremities of the roof rafters $E'$ are attached. The upper extremities of these rafters are connected with and support a ventilating box $F$, mounted in the central part of the top of the structure and projecting both above and below the rafters $E'$ and the canvas covering $E^2$ at their upper extremities. It will be understood that the rafters $E$ and the covering $E^2$ constitute the roof proper of the structure. Mounted above the roof proper and extending parallel therewith is the fly or additional roof composed of rafters $G$ and a canvas covering $G'$. The lower extremities of the fly rafters are supported by brackets $G^2$, which are interposed between the two sets of rafters $E'$ and $G$. The upper extremities of the rafters $G$ are also attached to the upper portion of the ventilating

box *F*. Since the two sets of rafters *E'* and *G* are parallel with each other, it follows that the space $G^3$ between the roof and the fly is of uniform width its entire length. It must be understood that the space $G^3$ communicates at the bottom with the atmosphere, while at the top of the structure the space $G^3$ registers with openings *F'*, formed in two sides of the ventilating-box, whereby the air may circulate freely through the space $G^3$, being allowed to enter the said space at the eaves of the structure on one side thereof and escape at the eaves on the other side thereof, if desired. The top of the ventilating box is composed of a rigid bar $F^2$ and two hinged members $F^3$, adapted to close the said box at the top when desired in order to make the roof perfectly tight from above whenever the circumstances may require this condition. The parts $F^3$, however, are adapted to be kept open and locked in the open position, as indicated in the drawings. To each of the hinged parts $F^3$ of the ventilating box is pivotally connected a link $F^4$, while with the lower extremity of each is pivotally connected an adjusting bar $F^5$, which extends downwardly into the tent and passes through a guide $F^6$."

It thus appears that the means adopted by the patentee for producing the desired ventilation are to make small separate openings or one continuous open space near the floor of the structure through which fresh air from the outside may be introduced into the interior and by simple and most obvious expedients deflected upwards towards a box opening at the ridgepole which extends through both the canvas roofs and out into the open air. This ventilating box is equipped at its lower end with a device for opening and shutting it as occasion may require and is covered at the upper or outer end by an angular cap or hood consisting of two members hinged at the top so that either or both of them may be opened readily or closed, like the opening at the lower end, by manipulating certain simple connecting rods extending down into the interior of the building. Into this box the air entering at the eaves and ascending between the double canvas roof finds an outlet through an opening made in the side of the box for that purpose.

There is no pretense of novelty in a double canvas roof or in a ventilating box with an opening in its side for the circulation of the air coming up through the air space between the two roofs, or in a device at the lower end of the box for controlling the opening at that end or in the contrivances for doing so by a person in the interior of the room or by these elements in combination. These elements and this combination were shown in the Gutshall patent or in the structures made by the Colorado Tent & Awning Company in general conformity to the specifications of that patent, and these things were not only presumptively known, but were in fact known to Parks before he applied for the patent in suit. He admitted several times in his testimony that the only difference between the device of his patent and that of the Gutshall patent was the opening in the fly at the top and the ventilator in the sheeting near the floor in the side walls of the tent.

The Parks invention, if any, therefore, consisted in extending the ventilating box of Gutshall up through the outer fly canvas, into the open air, and providing its outlet with the adjustable angular hinged hood, opening air holes near the floor of the tent, and providing them with an inside hinged or swinging cover or door.

Counsel for the patentee call particular attention to the advantage of the hinged hood at the top. It is argued that either member of this hood can be opened or closed according to the direction of the wind or the condition of the weather, and thereby proper ventilation secured without unnecessary exposure to the occupants of the tent. It is also claimed that some special and novel advantage is found in the provisions for covering and controlling the ventilating holes near the floor in this: That the inwardly swinging cover hinged on one of its edges to the sheeting of the tent, just below the hole, so operates that it may when opened be confined and held at such a degree of inclination as to naturally direct the inflowing current of air upwards towards the ventilating box in the ridgepole.

[1] Counsel for both parties studiously avoided discussing the issue of patentable novelty in view of the prior art, other than that shown in the Gutshall patent, although invited by the court at the argument to do so in the light of common experience and observation. They evidently desired a determination of the case on the issue of infringement only, to the end that neither of their patents should be declared void, but that the principle of the alleged invention should be upheld and established. But we cannot be subservient to their desires. The public is an interested party in every patent case. To entitle an individual to exact toll from the public for the manufacture, sale, or use of any article, he must, in the language of the law, have invented something new and useful. Unless it be *new* in the sense of patentable novelty (as distinguished from mere mechanical adjustment or adaptation), and *useful,* the public should not be subjected to the burdens of a monopoly in its handling or use. Notwithstanding, therefore, that we have not been favored with any exploitation of the prior art in tent making or with any argument upon the unpatentability of the improvements of the patent sued on, we are nevertheless constrained to determine the same in the light of common information of which we take judicial cognizance, whether obtained from observation or published treatises. Baker v. Duncombe Mfg. Co., 77 C. C. A. 234, 146 Fed. 744, and cases cited.

[2] We cannot as judges shut our eyes to what everybody else knows. The wigwam of the North American Indian disclosed the principle of the patent in suit. The Century Dictionary describes it thus:

"The tent or lodge of a North American Indian, generally of a conical shape and formed of bark or mats, or now most often of skins, laid over poles stacked on the ground and converging at the top, where is left an opening for escape of smoke."

The inevitable openings near the ground or the entranceway to the tent and the hole at the top occasioned by the criss-crossing of the poles performed the function of ventilation and in practically the same way as the holes near the floor and at the ridgepole of the device of the patent.

The vent pipes with their inside opening in the bathrooms or closets of residences, extending thence up through the roof and covered at the upper end by devices of one kind or another so as to permit free and constant ventilation, and yet be protected against injurious storms

or other atmospheric disturbances, are other instances of ventilation by practically the same means as those employed in the patent.

The slatted cupola or ventilating louver frequently observed on or near to the ridgepole of barns or stables, coacting with openings in the side walls near the floor, afford also a familiar instance of ventilation by means similar to those employed in the patent.

In the case of Hayes v. Seton (C. C.) 12 Fed. 120, is found in the literature of the law a description of a device similar to the device of the patent. In that case a ventilating apparatus is described as follows:

"A metallic ridge-box capable of being used as a ventilator, so constructed as to admit of an ingress of pure air, which comes in contact with the impure air of the building, is driven into an upper cavity, which, being perforated, gives the egress."

These and other such devices which may readily occur to the mind disclose that ventilation by means of openings at the bottom and top of a tent or other structures was not an original inspiration of Mr. Parks.

This leaves the angular hood composed of its two members so hinged at the top as to enable the upper opening to be closed or partially closed at pleasure and the hinged covers over the holes near the floor as the only improvements from which to extract patentability in this case. These devices, subject to manipulation in an old familiar way as and when desired, seem to us to be an obvious adaptation of known means to a desired end, plainly suggested by the laws of physics and the common experience of mankind; and we have no doubt, if the prior art had been exploited at all, these simple devices or their substantial equivalents would readily have been called to our attention.

We conclude that there was no patentable novelty in this patent, and for that reason the decree below adjudging the patent valid and infringed must be reversed, and the cause remanded, with directions to the court below to dismiss the bill.

SMITH, Circuit Judge, concurs in the result.