MORGAN ENVELOPE CO. *v.* ALBANY PERFORATED WRAPPING PAPER Co. *et al.*

(*Circuit Court, N. D. New York.* December 10, 1889.)

**1. PATENTS FOR INVENTIONS—TOILET-PAPER PACKAGES—NOVELTY.**

Letters patent No. 325,410, granted to Oliver H. Hicks, September 1, 1885, for a "package of toilet-paper," the claim of which was for "a bundle of toilet-paper, consisting of one or more lengths of paper formed into a flexible continuous band, of oblong or oval shape, the short rounded ends of said bands serving as guides for determining the proper points at which the paper is to be separated, * * * and affording also the most advantageous surfaces upon which to tear the paper," are invalid for want of novelty.

**2. SAME—TOILET-PAPER FIXTURES—INFRINGEMENT.**

Letters patent No. 325,174, granted to Oliver H. Hicks, August 25, 1885, for a fixture to be used with oval-shaped rolls of toilet-paper, claimed (3) "the combination, with an elongated or oval oscillating roll of toilet-paper, actuated in one direction by a pull upon its free end of a stop constituting a knife or cutter, co-operating with the roll to sever the unwound portion therefrom when the roll has reached the limit of its motion when so actuated." The fixture was durable, and designed to last for many years, while the paper might be used up in a short time. *Held,* that a sale of such rolls of paper manufactured by defendants, mounted on fixtures which have been previously made and sold by complainants with paper mounted thereon, was not an infringement.

**3. SAME.**

Letters patent No. 357,993, granted to Oliver H. Hicks, February 15, 1887, claimed "(1) the combination, with an oscillating roll of toilet-paper, actuated in one direction by a pull upon its free end of a stop for arresting the roll at the limit of its motion when so actuated, whereby, upon the arrest of the roll, a portion unwound from it may be removed; (2) the combination, with an oscillating roll of toilet-paper," etc., "of stops for arresting the roll at the limit of its motion when so actuated, and also for arresting the motion of said roll at the limit of the oscillation in the opposite direction; (3) the combination, with an oscillating roll of toilet-paper having its bearings out of line with its center of gravity, and actuated in one direction by a pull upon its free end of a stop for arresting the roll, * * * whereby, when the roll has been arrested, and the length of paper removed, the roll will automatically resume its normal position." The fixture consisted of a back plate, two rigid arms extending outwardly at right angles, a flat metal core plate, on which the roll of paper is mounted, pivoted at the outer ends of the arms, and heavier on one side of the pivot than on the other, and a blade, extending between the arms at their inner end, acting as a stop and a cutter. The fixture sold by defendants differed only in that its arms were hung loosely on the back plate by means of a hinged transverse bar, which acted as a stop when oval rolls, mounted on a sufficiently wide core plate, were used with it. This fixture was a duplicate of an old one in common use at the date of the patent, which used cylindrical rolls on wooden spreaders, except that it had sometimes the core plate of the patent and oval rolls when it did the same work. *Held* that, as the core plate was not an element of the above claims, if they were infringed by a sale of defendants' fixture with oval rolls of paper, they were invalid for want of novelty; and if the stop described were an essential element of them, they were not infringed.

**4. SAME.**

The fifth claim of No. 357,993 was for "the combination, with the supporting arms, of an oscillating core plate, weighted on one side of its pivots so as to cause the roll supported by it to automatically resume its normal position after being oscillated, and a stop for limiting the motion of said plate." *Held,* that this claim was infringed by defendants' fixture whenever a core plate was used, weighted or hung so that its depending side, when rotated upwardly, would be arrested by the transverse bar if any paper were left on the roll, and would fall by its own gravity.

In Equity. On bill for infringement of patents by the Morgan Envelope Company against the Albany Perforated Wrapping Paper Company and others.

*Church & Church* and *B. F. Thurston,* for complainant.

*A. J. Todd,* for defendants.

WALLACE, J. The complainant sues for the infringement by the defendants of three patents granted to Oliver H. Hicks,—the first being No. 325,410, dated September 1, 1885, for "Package of Toilet-Paper;" the second being No. 325,174, dated August 25, 1885, for "Toilet-Paper Fixture;" and the third being No. 357,993, dated February 15, 1887, for "Apparatus for Holding Toilet-Paper." All of them relate to cognate subject-matter; the first being for toilet-paper when put up in specified form, and the others being for apparatus for holding the paper, and permitting it to be removed for use.

The first patent is invalid for want of novelty. The subject of this patent is well stated in the claim that appeared in the application for the patent, filed July 10, 1885, viz.:

"As a new article of manufacture, a bundle of toilet-paper, consisting of one or more lengths of paper formed into a flexible continuous band of oblong or oval shape, the short rounded ends of said bands serving as guides for determining the proper points at which the paper is to be separated in order to produce sheets of a size desirable for use, and affording also the most advantageous surfaces upon which to tear the paper."

The only novelty in this patent consists in putting up the paper in the form of an oblong or oval shaped roll. It was old to put up such paper in the form of sheets cut the proper size for use. It was old to put it up in the form of cylindrical rolls; and when it was put up in such rolls it was sometimes in one continuous or unbroken sheet, and sometimes in a sheet perforated transversely at given intervals, so that it could be easily torn from the roll in pieces of a predetermined length. It would not seem to involve invention to put up paper in the form of oval or oblong rolls which had commonly been put up in the form of cylindrical rolls; but, however this may be, it is abundantly shown in the proofs that it was likewise old to put up the paper in the exact form of the patent. The old oval rolls shown in the patent to Peacock, and those like "Defendants' Exhibit No. 24," were of smaller size than the roll preferably contemplated by the patent, but there is no patentable difference between them. Although the rolls of the patent are not new in a patentable sense, they are peculiarly useful when employed in fixtures like those of the second and third patents, and the real invention of Hicks consists in devising the fixtures in which the paper is to be arranged.

The second and third patents in suit are for a fixture to be used with oval-shaped rolls of toilet-paper, and which is designed to arrange the paper so as to prevent more than a given quantity of it from being withdrawn from the package at a single operation, and so that in the act of withdrawing that quantity it shall be automatically severed from the package, leaving pendent from the package a free end to serve as a means for withdrawing a like quantity by the next operation. The fixture consists of a back plate, two arms rigidly connected therewith, extending outwardly therefrom at right angles; a flat metal core plate, upon which the roll of paper is designed to be mounted, pivoted on the outer end of the arms, and made somewhat heavier on one side of its pivot than on the

other; and a blade, extending between the arms at their inner end, which performs the functions of both a stop and a cutter. The blade extends forward from the back plate sufficiently to arrest the core plate, and limit its motion when rotated in either direction. In operation, after the roll of paper has been mounted upon the core plate so that a free end is depending, the free end is pulled by the person who desires to use the paper. This pull rotates the roll upwardly until it is arrested by the blade, and when its rotation is arrested, one end of the package rests upon the blade, and the depending end of the paper is severed at the edge of the blade by another pull. Thereupon the weighted core plate, pivoted as described, swings back the package automatically until the other end is arrested by the blade, when it resumes its original position. The specification states:

"It will be observed that the plate or blade, M, performs the functions of a stop for arresting the forward rotation of the roll, and holding the roll while the section of paper is being removed, as well as the function of severing said section of paper; and its importance as a stop is as great, if not greater, than its importance as a cutter, since the stopping of the roll, coupled with the continued movement of the free end of the paper, must necessarily cause the severance of the paper at some point at or near the point the end leaves the body of the roll."

The specification also states that the outer edge of the blade, M, may be made either plain or serrated.

The fixture thus described is an ingenious and meritorious invention. It immediately commended itself to the public as a simple and efficient device by which toilet-paper could be economically and readily severed from the roll in pieces of convenient length. It dispensed with the necessity of putting up the paper in sheets, or in rolls perforated transversely to enable it to be detached in pieces of the requisite length for use. But in view of the "Albany Fixture," a fixture at the time in common use, and in which cylindrical rolls of perforated paper were employed, the essence of the invention is, in such a construction or arrangement of the blade and core plate in reference to one another, that when the latter is rotated the blade will not permit it to pass by. If there were room enough between the two parts to permit the core plate to pass the blade, the apparatus would cease to work when the thickness of the roll of paper should be less than the space between the blade and the core plate.

The second patent contains five claims, each of which is for a combination in which the roll of paper and a knife or cutter (the blade, M,) are elements. The third claim, which is the only one alleged to be infringed by the defendants, is as follows:

"The combination, with an elongated or oval oscillating roll of toilet-paper, actuated in one direction by a pull upon its free end of a stop constituting a knife or cutter, co-operating with the roll to sever the unwound portion therefrom when the roll has reached the limit of its motion when so actuated, substantially as described."

The defendants manufacture and sell a fixture known as the "Universal Fixture," together with oval-shaped rolls of paper to accompany it, and be used in it. Their fixture does not contain a cutter, and this is

practically conceded by the complainant. The complainant asserts, however, that the defendants infringe this claim because they sell rolls of oval toilet-paper manufactured by them, in conjunction with or mounted upon fixtures which had been previously made and sold by the complainant with rolls of paper made by the complainant. The fixtures thus sold by the defendants were once lawfully purchased, with paper mounted therein, from the complainant, and after the paper was used up the purchasers sold the fixtures to the defendants. . In other words, the case is as though the defendants were charged with infringement because they sell rolls of oval paper which they manufacture to persons who have bought the paper and fixtures from the complainant, and, having used up the paper, wish to get more to use with the fixtures. The sale of the paper to those who have a lawful right to use the fixture, and to use both the fixture and paper together, is not an invasion of the rights of the complainant. The paper, as an element of the patented invention, is one for temporary use only. The fixture proper is a durable device, which is designed to last for many years; while the roll of paper may be completely used up in a few days. This circumstance repels any inference that the right of a purchaser to use the fixture does not survive the life of the paper. The purchaser who buys a machine or device, patented or unpatented, without any restriction as to the mode or extent of the use to which he may apply it, acquires all the rights of the seller, and may do with it whatever the seller might have done if he had not parted with it. He acquires the right to use it, to repair it, and to sell it to others; and those to whom he sells acquire all his rights. If the original vendor is the licensee of the owner of the patent of the whole monopoly in the use and sale of the article, a purchase of the article from him is, in legal effect, a purchase from the owner of the patent. The sale of the article transfers the monopoly right in the article itself without qualification. *Holliday* v. *Matheson*, 23 Blatchf. 239, 24 Fed. Rep. 185. If the purchaser may lawfully repair the article, or remove a part of it and substitute another, it is quite immaterial whether he does it by his own hands or procures another to do it for him; and if the act when done by himself does not violate the rights of the owner of the patent, it does not when performed by another at his request. So, also, the purchaser, instead of repairing the article himself, or procuring another to do it for him, may sell the article in the condition in which it is to another, and the latter acquires all his right to repair it. These rights are all incident to the property in the article itself. The purchaser does not acquire any rights in the monopoly directly, but he does acquire the right of unrestricted ownership in the article he buys as against the vendor, including, as an inseparable incident, the right to use and enjoy it as his own, and to transfer his title to others. On the other hand, when the owner of the patent sells the patented article under circumstances which imply that the purchaser is not to acquire an unqualified property in the thing purchased, as where a license accompanies the transfer, the purchaser's rights are limited to the extent implied by the license, or the other circumstances. The right to repair a patented article bought of the patentee, or to supply a part which

has become inoperative or worn out, is distinctly declared in *Wilson* v. *Rousseau*, 4 How. 647, and in *Wilson* v. *Simpson*, 9 How. 109. If it did not exist, the value of most patented articles would be materially lessened, and thus the owner of the patent, as well as the public, would fail to derive the full benefit of the invention. There is nothing inconsistent with these views in the case of *Cotton-Tie Co.* v. *Simmons*, 106 U. S. 89, 1 Sup. Ct. Rep. 52. There the patented article was sold, "Licensed to use once only," and after it was practically worn out, and the right of the purchaser to use it had terminated, another person, who bought the parts as old iron, reconstructed them anew into the patented article. If in this case the fixtures had been worn out, or had in any other way fully subserved the use for which they were intended when sold, the doctrine of that case would apply.

The law of contributory infringement has no application to the case. That doctrine rests on the principle that he who concerts with another to do a wrong is an abettor, and equally guilty with the one who actually commits it. Here no wrong has been committed.

The complainant cannot rely upon the inconclusive statement, elicited upon cross-examination from the defendant Wheeler, to establish a sale by the defendants of paper with fixtures which had not been sold by the complainant. It would be mere guess-work to infer from that testimony that the fixtures thus sold were not originally made and sold by the complainant. The affirmative upon the issue of infringement is with the complainant, and the *onus* of proof is not satisfied merely by showing a state of facts from which infringement may be conjectured.

The third patent describes the fixture of the second patent, but its claims are for combinations in which the blade has the functions of a stop, instead of a knife or cutter, as in the claims of the second patent. The claims of this patent alleged to be infringed by the defendants are claims 1, 2, 3, and 5. These claims are as follows:

"(1) The combination, with an oscillating roll of toilet-paper, actuated in one direction by a pull upon its free end of a stop for arresting the roll at the limit of its motion when so actuated, whereby, upon the arrest of the roll, a portion unwound from it may be removed, substantially as described.

"(2) The combination, with an oscillating roll of toilet-paper actuated in one direction by a pull upon its free end of stops for arresting the roll at the limit of its motion when so actuated, and also for arresting the motion of said roll at the limit of the oscillation in the opposite direction, substantially as described.

"(3) The combination, with an oscillating roll of toilet-paper, having its bearings out of line with its center of gravity, and actuated in one direction by a pull upon its free end of a stop for arresting the roll at the limit of its motion when so actuated, whereby, when the roll has been arrested, and the length of paper removed, the roll will automatically resume its normal position, substantially as described."

"(5) The combination, with the supporting arms, of an oscillating core plate, weighted on one side of its pivots so as to cause the roll supported by it to automatically resume its normal position after being oscillated, and a stop for limiting the motion of said plate, substantially as described."

It is insisted for the complainant that the Universal fixture sold by the defendants is an infringement of the fifth claim, and that when that fixture is used with oval-shaped packages of paper the combinations of the other claims are infringed. This fixture has a back plate and arms which carry a flat metal core plate, which is pivoted into them, and is heavier on one side of its pivot than on the other. The arms, instead of extending outwardly from the back plate at right angles, and being rigidly connected with it, as they are in the fixture of the patent, are hung loosely upon the back plate by means of a transverse bar, to which they are attached. This bar is hinged to the back plate. In use, after the paper has been mounted upon the core plate, and the free end of the package is pulled, the package rotates upward until it comes in contact with the transverse bar. If the package is so large that the arms will not carry it beyond the transverse bar, it is stopped, and in that case the paper is more likely to be severed where it is in contact with the bar than at any other place. When perforated paper is used, as it is largely with the Universal fixture, the bar adds a resistance to the rotation of the package which causes the paper to break on the line of the perforation. To this extent the transverse bar operates as a stop, but it is obvious that the back plate itself would operate as a stop, and that the transverse bar only does somewhat more efficiently the work which would be done by the back plate if the arms were immovably attached directly to it. When cylindrical rolls of paper are used in this fixture, and are mounted on a cylindrical core plate, which is usually the case, the transverse bar performs no other function than that of carrying the arms. When, however, oval rolls are used in it, and are mounted on a core plate of a width beyond its pivoted center, which prevents it from passing by the transverse bar when rotated, the transverse bar performs the functions of a stop. When a weighted core plate of the requisite shape and dimensions is used in it with the oval roll paper, the parts perform the functions of the fixture described in the specification, and shown in the drawings of the patent, except the cutting operation. The several parts of this fixture, exclusive of the core plate, operate conjointly when used with the oval roll of paper, just as they do when used with the cylindrical roll. They do precisely the same work which the Albany fixture does when used with oval rolls of paper, and by the same mode of operation. The Universal fixture is a duplicate in all its parts of the old Albany fixture, except that, instead of the cylindrical wooden spreader upon which the roll of paper is mounted in the Albany fixture, it has in some instances the core plate of the patent. The defendants sell both the fixture and oval paper to be used in it.

For the reasons stated in considering the validity of the first patent, oval roll paper was old at the time when the device of the patent was invented. Inasmuch as novelty does not reside in the combination of an old element with other old elements, when no new mode of operation results from their conjoint action in the new combination, none of the claims of the patent can be sustained as valid which are to be read as

for a combination consisting of the oval roll and the parts found in the Albany fixture. The core plate is not an element of either the first or the second claim of the patent, and it follows that if the Universal fixture, when used with such a roll, is an infringement of these claims, the claims are invalid. If these claims are given a more limited interpretation, by which a stop structurally such as is described in the specification is an element, the defendants do not infringe them. The same conclusions obtain respecting the third claim. The specific core plate is not an element of that claim; and the oval roll of paper, if hung on a cylindrical core plate in the Universal fixture or in the Albany fixture, would have "its bearings out of line with its center of gravity," as described in the claim.

The fifth claim is for a combination of all the parts of the fixture, and can be interpreted as one in which a core plate and a stop, so constructed and arranged with reference to each other that they cannot pass one another when the core plate is oscillated, are elements. The two parts are described by letters of reference to the drawings in the specification,— the stop as "M," and the core plate as "F;" and, although the language of the specification does not point out anything in respect to their relative dimensions, the drawings show that they are of such breadth, respectively, that the core plate cannot be rotated past the stop in either direction. It is apparent that, if this feature of relative dimensions were ignored, the parts would not co-operate, or would only co-operate imperfectly, to perform the functions assigned to them of arresting the roll of paper when mounted and rotated. The core plate of this claim is weighted on one side of its pivots. This is effected when the pivots are arranged eccentrically to the core plate, or by attaching them centrally thereto, and having one side of the core plate heavier than the other. In such a combination the transverse bar of the Universal fixture is the equivalent of the blade of the patent. When a core plate is used in the Universal fixture which is weighted or hung so that its depending side, when rotated upwardly, will be arrested by the transverse bar if there is any paper left in the roll, and will fall by its own gravity, that fixture infringes the fifth claim of the patent. Such a core plate is sometimes used in that fixture, and the complainant is accordingly entitled to an injunction and an accounting.

The defenses which rest on the prior use of the Coffee fixture, and the prior invention of Richardson, do not meet the fifth claim of the patent, as thus interpreted. Coffee did not employ the core plate, and Richardson did not employ the stop of the patent.

The complainant is not to recover costs of the suit.