E. E. JOHNSON CO. v. GRINNELL WASHING MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1916. Rehearing Denied March 29, 1916.)

No. 2285.

1. PATENTS ⬡328—VALIDITY—GEARING FOR WASHING MACHINE.

The Phillips patent, No. 950,402, for a gearing device especially adapted to the operation by power of washing machines and wringers, by means of which the washing parts of the wringer may, when desired, be operated at the same time by the same power shaft, *held* void as merely an aggregation of old elements.

2. PATENTS ⬡26(1)—"INVENTION"—COMBINATION OF OLD ELEMENTS.

It is not "invention" to combine old devices into a new machine or manufacture, without producing any new mode of operation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬡26(1).

For other definitions, see Words and Phrases, First and Second Series, Invention.]

3. PATENTS ⬡26(1)—INVENTION—COMBINATION OR AGGREGATION.

To constitute a patentable combination, it is essential that there should be some joint operation performed by its elements producing a result due to their joint and co-operating action.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⬡26(1).]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

Suit in equity by the Grinnell Washing Machine Company against the E. E. Johnson Company. Decree for complainant, and defendant appeals. Reversed.

The District Court found claims 5, 6, 7, and 8 of patent No. 950,402, granted February 22, 1910, to W. F. Phillips for a gearing device especially adapted to the operation by power of washing machines and wringers to be valid and infringed by appellant. In the proceedings, claim 6 was conceded to best set out the invention, and will be herein taken as typical of the subject-matter of this suit. It reads as follows; viz.:

"A gearing device of the class described comprising a support, a power shaft mounted on the support, means for imparting a continuous rotary motion to the power shaft, an upright shaft *45* mounted in the support, a driving device for the upright shaft operatively connected with the power shaft and capable of imparting an alternating rotary motion to the upright shaft, a horizontal shaft *39*, a driving mechanism for the said shaft *39* connected with the power shaft and capable of imparting a rotary motion to the shaft *39*, and a controlling means applied to the driving device for the shaft *39*, for reversing the

movement thereof and also for operatively disconnecting the shaft *39* from the driving shaft."

Figs, 1, 2, and 7 of the drawings are as follows, viz.:

*Fig. 1.*

*Fig. 2.*    *Fig. 7.*

Fig. 1 shows a side elevation of the device mounted on a tub, Fig. 2 shows a top plain view thereof, and Fig. 7 shows a detail plan of the actuating device of the wringer. The body portion of the washing machine 10 carries a cover 11. A wringer 12 is placed on the body portion. The washer and wringer are not elements of the patent. The greater part of the device of the patent is connected with and supported by the base 13, bolted to the body portion of the washing machine, on which base are the bearings 14 to receive the rotatably mounted power shaft 15. At its outer end shaft 15 carries a gearwheel 16 meshing with small gear 17 on the shaft which carries the flywheel. The application of power from the motor 23 through the pulley 22, belt 21, and flywheel 20 will be readily understood. Mounted on the base 13 is a rotatable shaft 24, supported in bearings 25, having rotatably mounted thereon pinions 26 and 27 spaced apart and provided with ratchet clutch members 28 on their adjacent faces. Between pinions 26 and 27 is a hub 29 slidingly and nonrotatably mounted on the shaft 24 and having an annular groove 30, and on its outer faces ratchet clutch members or teeth 31, designed to coact with the teeth on the beveled pinions 26 and 27. The clutch member 29, by means of its connection with the lever 34, can be manually manipulated so as to reverse the movement of the wringer cylinders by throwing the clutch cam first into moving contact with the gear wheel 26 and then back to 27, or, when desired, the operator can throw the clutch into an inoperative position by throwing the arm 34 into the center notch provided for controlling the operation of the direction mechanisms. Even when the cam is at its inoperative position, the beveled pinions are in mesh with the beveled pinion 15a which is at the inner end of the power shaft 15 and furnishes power to the wringer device. The device for imparting this power to the wringer shaft 39—the sprocket wheels 36 and 38 and the sprocket chain 37—will be readily understood without further description thereof. The power shaft 15 carries a small gear wheel 40 for operating the washing machine. This part of the claimed patented device is operated by one of the well-known methods whereby the stirrer shaft or dolly is given an oscillating motion by means, not here in question, applied to the vertical shaft 45 on the support. The support, or lid, carrying the washing machine, is hinged and may be lifted up so as to release it from contact with the power shaft. In such case the wringer will be operated, if desired alone. Without its being so out of mesh with the pinion on the power shaft, there is no way of operating the wringer without at the same time operating the washing machine, though, by means of the cam clutch device, the wringer may be at rest when the washing machine is in action. The power shaft is located above the longitudinal central portion of the base 13. The clothes constituting the wash may be removed by lifting the lid carrying the washing device which rests thereon. Then the contents of the tub can be removed manually and fed to the wringer, and back again if desired. There is no operative connection between the clothes in the tub and the wringer.

The defenses set up are invalidity, because of an unpatentable combination, also want of novelty in view of the prior art, and noninfringement. The patent was twice sustained by the District Court for the Southern District of Iowa and by the Eighth Circuit Court of Appeals in Newton Washing Machine Co. v. Grinnell Washing Machine Co., 222 Fed. 512, 138 C. C. A. 112. The decision of the District Court in this present cause was held to await the decision of the cause in the Eighth circuit. Thereafter the order sustaining the patent and decreeing infringement and accounting was entered.

The errors assigned are: (1) That the court erred in holding validity and ordering an accounting; (2) that the court erred in not holding the patent invalid, because (a) of aggregation, (b) of anticipation, and (c) of nonpatentable subject-matter; (3) that the court erred in not so limiting the scope of the patent as to differentiate it from appellant's device, and in not dismissing the bill for want of equity.

Taylor E. Brown and Clarence E. Mehlhope, both of Chicago, Ill., for appellant.

Ralph Orwig, of Des Moines, Iowa, for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above).    [1] The most important question presented is: Do the facts disclose a combination or a mere aggregation? It is conceded that the washing gear, the wringing gear, and the operating gear are all old. Efforts of appellant's counsel to ascertain just what the combination claimed by appellee was, were not entirely satisfactory. Appellee's expert witness was asked:

"Is there any coaction whatever between the washing machine as such and the wringing machine as such, or any co-operation between them?"

To which he replied:

"I think there is. You can use both at the same time. You can be washing one batch of clothes while you are wringing out another batch in the course of the same operation of doing *a family washing.*"

In reply to the question,

"What new result is performed by this gearing described in the Phillips patent and claimed in the claims in issue?"

—the same witness replied:

"As nearly as I can recall the prior art, the Phillips patent was the first to disclose a power-driven dolly type of machine, in which the user could use the machine for washing clothes and wringing them into one tub and out of another as occasion demanded, in the course of doing, say, *a family washing.*"

When asked by appellant's counsel,

"Suppose you have one blanket to wash—you put it in the washing machine and wash it. Then that day or the next you wring it. Will you state in what way there is any co-operation between the action of these two machines, speaking, as I have been, of the Phillips machine?"

—appellee's expert, after some colloquy, replied:

"There is the structural co-operation or coaction that I explained before, inasmuch as you have one common support for them and a common power shaft and a common motor."

When further asked as to whether there is not the same coaction between machines driven by a line shaft on the machine shop bench as there is between the washing machine and the wringer, the same expert again, after colloquy, replied:

"Considered purely as a drive shaft and the first element of the train of gearing, yes; but when you come to consider the action on the ultimate elements of the gears, that would be very different. In one case you have the final action on the clothing. In the other case, if I recall your illustration correctly, the final action is on the wood that is being put in shape."

The same witness conceded that to drive one shaft from another shaft and to drive a reverse mechanism, so that a shaft may be driven in either direction or stop it, was old. When asked:

"The sum and substance of your position with regard to the claims in issue here would then appear to be this—and please state yes or no—whether I have

correctly stated your position; if one take a dolly washing machine of the generally well-known type that has been on the market and was on the market long prior to Phillips—if he placed on the tub of that washing machine a wringer in any of the usual places where a wringer is placed most conveniently, if he takes any kind of familiar mechanism for operating that dolly, all well known prior to Phillips, if he provides means for driving his wringer by power, with a reverse mechanism so the wringer may be driven in either direction, and couples the wringer drive mechanism, no matter what kind it may be, provided it includes a reverse mechanism, and the dolly driving mechanism, with a common drive shaft, he will infringe the claims involved in this suit?"

—this witness replied:

"I think your statement is a little bit broad in some particulars. As far as it goes, it is probably correct; but I would like to add that one claim, for instance, the sixth, provides that your reversing gearing must be of such a character that the controlling mechanism will allow the wringer rolls to be at rest in spite of the fact that the power shaft is running. Possibly your statement is rather broad with reference to claim 7 for instance, because I do not think you included the limitation of 'a hand lever for adjusting said controlling means' in your statement. Then, too, you omitted from your statement the limitation as to there being 'a prime mover carried by the support for imparting a continuous rotary motion to the power shaft.' Furthermore, as I understood your statement, you did not include any limitations as to the two trains of gearing leading from the wringer rolls and the dolly shaft to the common drive shaft, being properly designed on the one hand to rotate the wringer rolls at a practical speed, and on the other hand, being properly designed to swing the dolly shaft through the proper angle and at a proper speed. It seems to me that with the additions I have made by way of my answer, that the statement would be correct, but as it stood in your question, it is decidedly too broad."

In his brief, page 15, appellee's counsel say:

"He further realized that, in order to make his machine of the greatest possible value to the housewife, he must greatly reduce the time required for an ordinary family washing, by contriving a structure that would both wash and wring at the same time, not, of course, on the same garment, but upon different batches of the same washing."

At page 23 it is said:

"Applying this well-settled rule to the instant case, it is only necessary for the court to find that the Phillips washing machine accomplishes the old result—i. e., rubbing and squeezing the clothes, in a more convenient, facile, and economical manner than was capable by the use of any prior art device."

Speaking of a so-called Shedlock device, on page 64 of the brief, the same counsel say:

"* * * But he [Shedlock] never had any notion of providing a unitary gearing to do all of the washing," etc.

Again, at page 73 of the brief:

"Clearly, then, the reason why this Shedlock device does not belong to the same class of inventions as the Phillips device, and the reason why it cannot be seriously considered as being a complete anticipation of the Phillips device, is that Shedlock never even considered the problem of providing a single unitary washing machine device that was capable of doing all of the work inci-

dent to a washing. He only contemplated doing the rubbing part of the washing process and contented himself with a mechanism for that purpose."

Again, at page 101 of their brief, appellee's counsel say:

"Not a single prior art machine for doing the work of a family washing by power has remained on the market since the appearance of the Phillips machine."

The only reference to the point now under consideration, contained in the said opinion of the Eighth Circuit Court of Appeals, reads as follows:

"There is no new element in the combination. Therefore, in order to be patentable, the combined action must produce some new result, or an old result in a more efficient and economical manner. The new result in this instance is the washing and wringing of clothes at the same time in a safe and convenient way. This does not mean that the garment is washed and immediately thereafter passed through the wringer. It means that, while some garments are going through the wringer, other garments are being washed and that the two operations go on simultaneously. The wringer is made subject to perfect control by a lever easily and safely manipulated by the operator. The device possesses elements of utility, novelty and invention. The washing machine and wringer are, by the gearing device, made to act jointly, and a new and useful result is produced. The device is therefore patentable."

Thus we have assigned as grounds for holding the device to be a valid combination, first, the structural co-operation based upon the facts of a common support, a common power shaft, and a common motor; and, second, a new result or an old result attained in a more efficient and economical manner, viz.: (a) Doing a *family washing;* (b) the wringer and washing device are made to act jointly—i. e., to operate at the same time, when desired. There is no pretense that the operation of the one affects that of the other. The operator must stop the washing machine by lifting up the tub lid before the clothes of that washing can be inserted in the wringer. The tub mechanism does not feed to the wringer. Its ultimate mission is ended when the lid is lifted. The work of feeding the wringer is exactly the same as it would be, were the wringer located on some other support equally convenient, although driven by some independent source of power. The two machines severally produce the identical result in the alleged combination which they produce when used independently. There is no relative motion of the two which contributes to or constitutes a new result. As before stated, the actuating mechanism is old and produces no new result. The fact that the two devices have the same support does not tend to show combination. The earth is the common support of all supported things. That fact suggests no thought of relation. Nor do we think that *doing the family washing* can be claimed as an improved result. Else one might add to the device of the patent an old dry kiln, ironing board, and heated flat iron, and have a patented family laundry. The only advantage obtained is one of convenience. The two machines could both be operated on the same support by different actuating means attached to the same tub, running at the same time,

and requiring no more regulating and protecting features than those of the patent. We do not find one element of coaction or co-operation between the washer and the wringer, or one patentable or improved result from their association on the tub. The action of the washwoman in taking the clothes from the tub and feeding them to the wringer results in nothing new. No unitary result is produced.

In the so-called capstan case (Morris v. McMillin, 112 U. S. 244, 5 Sup. Ct. 218, 28 L. Ed. 702) it was held that no invention was involved in merely operating by steam what was theretofore operated by other agencies. So that there is no more invention in the patent in suit than there would be were each machine operated by hand. What constitutes a patentable combination has frequently been before the courts. Mr. Justice Curtis, in Forbush v. Cook, 2 Fisher, 669, Fed. Cas. No. 4,931 (1859) says:

"To make a valid claim for a combination, it is not necessary that the several elementary parts of the combination should act simultaneously. If those elementary parts are so arranged that the successive action of each contributes to produce some one practical result, which result, when attained, is the product of the simultaneous or successive action of all the elementary parts, viewed as one entire whole, a valid claim for thus combining those elementary parts may be made."

In San Francisco Bridge Co. v. Keating, 68 Fed. 353, 15 C. C. A. 476, the Circuit Court of Appeals for the Ninth Circuit approved an instruction which reads:

"Invention is that which brings out of the realms of the mind something that never existed before. It may consist in the combination of old elements, the invention being in the combination. To make it so, there must be a joint action or operation of the elements—i. e., the elements must co-operate or act jointly to produce the result or object of the combination—or else the assembled elements [constitute] a mere aggregation, and is not patentable. It is not necessary, however, that their action should be simultaneous. They may be successive."

[2] The Supreme Court, in Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647, says it is not invention to combine old devices into a new machine or manufacture, without producing any new mode of operation. To the same effect are Florsheim v. Schilling, 137 U. S. 77, 11 Sup. Ct. 20, 34 L. Ed. 574, Morgan Envelope Co. v. Albany Paper Co. (C. C.) 40 Fed. 582, and Mahon v. MaGuire Mfg. Co. (C. C.) 51 Fed. 684.

[3] The argument supporting a combination in the present case is fully met by the Supreme Court in the so-called lead pencil case. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719. The element of convenience, here so much asserted, was in that case given no consideration. The Circuit Court of Appeals for the Second Circuit, in American Chocolate Machinery Co. v. Helm Stetter Co., 142 Fed. 978, 980, 74 C. C. A. 240, held that:

"The distinction between a combination and an aggregation lies in the presence or absence of mutuality of action. To constitute a combination it is

essential that there should be some joint operation performed by its elements, producing a result due to their joint and co-operating action."

There has been some disposition shown by the courts to soften the rule laid down by Justice Matthews in Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749. It is now conceded that the opinion taken as a whole did not justify the construction at first placed upon it. Fairly read, its true meaning is well stated by Mr. Merwin, in his book entitled "Patentability of Inventions," as follows:

"It may be gathered from this case that in a patentable combination there must be a new inter-reaction of some sort between the several elements. * * * It is not sufficient that one element is ineffective without the others —that its function is useless except in combination with other functions—but the function of one must be modified in some way by the function of another, so that the function of one element is not the same in combination that it was in the place whence it was taken; a peculiar function must be developed in the combination. This need not be true of every element in the combination, but it must be true of some one element, or of several elements, and the virtue of the combination must inhere in this peculiarity of function developed by it."

The opinion was cited in Palmer v. Corning, 156 U. S. 343, 15 Sup. Ct. 381, 39 L. Ed. 445, and in many other cases. In Spear Stove & Heating Co. v. Kelsey Heating Co., 158 Fed. 622, 85 C. C. A. 444 (C. C. A. 3d Cir.), it was held that, where the elements relied on merely brought to the alleged combination their own several functions, the patent was not valid. The assembly of a damper in the middle flue of a three-flue stove and a portable base plan did not involve invention. Bussey v. Excelsior Mfg. Co., 110 U. S. 131, 4 Sup. Ct. 38, 28 L. Ed. 95. Merely bringing of the devices into juxtaposition where each could work out its own result was held not to be invention. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Palmer v. Corning, supra. So, also, Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Hendy v. Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207; McCarty v. Lehigh Valley R. R. Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358; Union Edge Setter Co. v. Keith, 139 U. S. 530, 539, 11 Sup. Ct. 621, 35 L. Ed. 261.

In Thatcher Heating Co. v. Burtis, 121 U. S. 286, 7 Sup. Ct. 1034, 30 L. Ed. 942, it is said:

"There is no specific quality of the result [of the association of the elements] which cannot be definitely assigned to the independent action of a single element. There is, therefore, no patentable novelty in the aggregation of the several elements, considered in itself."

To the same effect are Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714; Brinkerhoff v. Aloe, 146 U. S. 515, 13 Sup. Ct. 221, 36 L. Ed. 1068; Double Pointed Tack Co. v. Two Rivers Mfg. Co., 109 U. S. 117, 3 Sup. Ct. 105, 27 L. Ed. 877; Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Mosler Safe Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182; Office Specialty Mfg. Co. v. Fenton Metallic Mfg. Co., 174 U. S. 492, 498,

19 Sup. Ct. 641, 43 L. Ed. 1058; Warner Instrument Co. v. Stewart & Clark Mfg. Co., 185 Fed. 507, 107 C. C. A. 607; Alexander v. De Moulin Bros. & Co., 199 Fed. 145, 117 C. C. A. 627. This court has given this question careful consideration in Railroad Supply Co. v. Hart Steel Co., 222 Fed. 261, 138 C. C. A. 23, where the defense of aggregation was overruled. "Unless the combination accomplishes some new result, the mere multiplicity of elements does not make it patentable. So long as each element performs some old and well known function, the result is not a patentable combination, but an aggregation of elements," says the court in Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991.

The presumption of validity growing out of the grant is strongly relied upon by appellee to sustain the patent. In Palmer v. Corning, supra, the court says:

"There is no doubt that in this as in all similar cases the letters patent are prima facie evidence that the device was patentable. Still we are always required, with this presumption in mind, to examine the question of invention vel non upon its merits in each particular case."

In the present case we have no hesitancy in holding that the presumption of validity has been overcome. While we have great respect for the opinion of the Eighth Circuit Court of Appeals, the decision of that court herein does not convince us that the device of the patent constitutes a valid combination. Had this phase of the case been as thoroughly presented to the District Court as it has been here, we think the decision must have been otherwise.

In view of our conclusion as to aggregation, we do not deem it necessary to consider the other questions raised in the record.

The decree of the District Court is reversed, with the direction to dismiss the bill for want of equity.