Jno. F. Oberlin, of Cleveland, Ohio, and Wallace R. Lane and Clarence J. Loftus, both of Chicago, Ill., and Bert A. Fagan, of Fort Wayne, Ind., for appellant.

Max W. Zabel, of Chicago, Ill., Fred W. Greene, of Fort Wayne, Ind., and A. Parker-Smith, of New York City, for appellees.

## TOKHEIM OIL TANK & PUMP CO. v. DEAN et al.
## No. 5139.

Circuit Court of Appeals, Seventh Circuit.

Oct. 1, 1934.

Rehearing Denied Nov. 13, 1934.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from an interlocutory decree of the District Court holding that appellees are the owners of the patent in suit, United States reissue letters patent No. 15,-606, issued on May 15, 1923; that the claims 3, 8, and 9[1] of the said reissued patent are valid and infringed by appellant, Tokheim Oil Tank & Pump Company; and ordering an injunction restraining further infringement and an accounting of profits and damages.

Appellant contends on this appeal: (1) That appellees are guilty of such laches in asserting the charge of infringement as to disentitle them to relief in equity; (2) that claims 3, 8, and 9 of the reissue patent are invalid because (a) they cover a function only, (b) they cover a different invention than that

---

[1] "3. In apparatus of the class described, a supply pipe and a measuring vessel, means for supplying liquid through the supply pipe to the vessel, means for controlling the supply, a closure for preventing access to said controlling means and means automatically set in operation by said closure when brought to closed position for draining said vessel."

"8. In a liquid dispenser, a cabinet having a movable door, a liquid accumulating receptacle, means for supplying liquid to the receptacle, means for dispensing liquid from the receptacle, drain means having communication with the receptacle, and an operative connection between the drain means and the door."

"9. In a liquid dispenser, a cabinet having a movable door, a liquid accumulating receptacle, means for supplying a liquid to the receptacle, an element to actuate the supply means, means for dispensing the liquid from the receptacle, a drain valve having communication with the receptacle, and means for connecting the drain valve with the door so that the. drain valve is operated by the movement of the door, said door having a part to prevent the operative movement of the supply means actuating element until the door is shifted to a selected position."

claimed in the original patent, (c) there was no proper showing of inoperativeness of the original patent due to inadvertence, accident, or mistake, (d) appellant had manufactured and sold the alleged infringing apparatus between the date of the issuance of the original patent and the application for the reissue with the knowledge of appellees and their predecessors; (3) that the commercial failure of Bowser's pumps was due to their impracticability and not the competition of appellant's pumps; (4) that the pumps manufactured by appellant do not infringe appellees' patent.

August Bowser filed his application for the original of the reissue patent on October 4, 1918, and the patent was granted September 23, 1919. Shortly after the granting of the patent, he died. His estate was administered by his sons-in-law, Fair and Bolens. On January 25, 1921, the administrators filed an application for a reissue of the original patent 1,316,557, and surrendered the latter. On May 15, 1923, the reissue patent was granted.

The original patent purports to cover an invention relative to improvements in a liquid dispensing apparatus, and the object thereof, as stated in the specification, was "to afford facilities by means of which gasoline and oils or other liquids may be dispensed in definite quantities without the necessity of operating a pump." Bowser's thought was to force the supply of gasoline or other oils through the dispensing apparatus by the use of compressed air.

Two claims were allowed by the Patent Office upon the original application. The first involved the placing of a throttle valve in a supply pipe "for alternately supplying air under pressure to the auxiliary tank and releasing it therefrom and including an electric switch for controlling the same located in the stand and means for simultaneously actuating the throttle-valve and switch." The second claim involved a combination of old elements, supply pipe, measuring vessel, and overflow pipe, to which were added "means for supplying liquid through the supply-pipe to the vessel; and a by-pass valve having connection between the overflow-pipe and the supply-pipe adapted for draining the vessel."

In the course of the application for the reissue patent, it was sought to carry claim 2 over into the reissue and interference was filed by Inventor Crouse. The interference was decided against Bowser's administrators and they acquiesced in the decision by canceling the claim, thereby, in effect, admitting that they were not entitled thereto.

The original Tokheim Company was located at Cedar Rapids, Iowa. In 1918, a corporation was formed in Fort Wayne, Ind., which acquired the Tokheim Company, purchasing all its property, assets, rights, and credits, and proceeded in the same general line of business, adopting the name of Tokheim Oil Tank & Pump Company and moving the business to Fort Wayne. One of the assets purchased was the title to the application of Dutton and Stone then pending (filed October 25, 1917) for a liquid measuring and dispensing apparatus. This patent was granted on October 11, 1921.

The Dutton and Stone patent was for a pump provided with a visible glass reservoir and also with a metal casing for shielding the glass, which, when the apparatus was in dispensing position, was raised so as to permit the customer to observe the liquid entering the measure and being drained therefrom into the customer's tank. The patentees describe the way in which the pump operated as follows: "It is desirable to drain the receiver at night, or other times when it is to be left for some time without attendance. Its well is accordingly connected with the waste-pipe as by a T 41 and intermediate fittings. One of these is a valve 42, herein shown as of the 'quick-opening' type, with a lever 43. This is so positioned as to swing into the path of the pawl 39 when in valve-closing position. When elevated, therefore, the hood is carried by this lever. This serves as a check against dropping the hood until the valve is first opened and the receiver drained of its contents."

In the specifications of the patent the object is stated to be to prevent fraud upon the part of the operator.

One of the officers of the newly organized corporation, Tokheim Oil Tank & Pump Company, was one M. B. Muxen. Soon after the corporation acquired the Cedar Rapids Tokheim Company, he began experimenting with a view to improving upon the pumps they were manufacturing. On April 10, 1919, he applied for a patent on a dispensing apparatus embodying these improvements. His device was of the same general nature as that disclosed in Dutton and Stone, and contained its own individual equipment for the purpose of draining the measuring tank or receiver. In Muxen's device, a shell covers and protects the visible receiver when closed and out of actual operation. When the operator proposes to open the dispensing apparatus for business, he opens the rounded shell. At

the base of the shell is a ring which is secured to the movable doors and has a recess made therein to receive the out-turned end of a lock arm, and is so located as to admit movement of the valve stem and lock arm only when the doors are in wide open position. The ring also has a projecting hinge located so as to engage the lever on the stem of the drain valve and hold the drain valve closed when the doors are in wide open position. When thus situated, the liquid may be withdrawn from the visible measure or receiver through the discharge valve only when the drain valve is closed. The ring has another projecting pin so located as to engage and move the lever to open position as the doors are closed, thus allowing the liquid remaining in the measure to drain back into the supply tank, while the discharge valve is inoperative.

In the actual prosecution of its business, appellant, which owned both the Dutton and Stone and Muxen patents, manufactured and sold apparatus containing devices for closing the supply pipe and opening the drain pipe which involved the ideas of both patents. The method above described was one used in the apparatus known as appellant's 117 Victory visible pump. A different construction was used in appellant-defendant's 200 and 225 pump, and a still more elaborate arrangement was disclosed in appellant-defendant's 600, 605, and 285 pumps. Devices were manufactured operable by motor and by hand.

In appellant-defendant's No. 605 pump, which was power driven, and No. 600 pump, constructed for hand operation, a door covering the operating works of the apparatus is used. The door is composed of iron, and, when it is closed, it covers a portion of the hand-operating elements and holds it in a fixed position so that it cannot be used. When in this position, an independent lever is attached to the hinge of the door, which is so constructed as to have a cam element on its outside surface when the lever is down, which corresponds to a similar device on the door, and of similar size, when the door is closed, and so arranged as to permit a spring actuated drain valve bolt to extend outwardly to the limit necessary to hold the drain valve open. When the door is opened, the drain valve is closed by raising the drain valve lever partially up, and, as it is raised, the cam element forces the drain value bolt inwardly, and, when the door is opened, its cam element co-operating with the lever also forces the spring actuated valve bolt inwardly, so that, during all the time the apparatus is in an operative condition, the drain valve is se-

curely held in a closed position by mechanical means. There is no method by which the drain valve may be opened during operation as in Bowser, where the mere pressure of the finger upon the push button opens the drain valve, permitting a dishonest operator to divide the measured quantity of gas in the vessel with the customer.

Appellant-defendant's 200 and 225 pumps are substantially the same and exhibit systems of operating the drain valves unlike either appellant-defendant's 117 pump or the Bowser device. The device is provided with a glass measuring vessel. Surrounding this vessel is a slidable hood which may be opened and closed. In this structure the dispensing means and its control, drain means and its control, and the cabinet and its sliding door, are so organized and interlocked that the dispensing operation cannot be carried on when the drain valve is opened, nor can the drain valve be opened while gas is being supplied to the customer. Fixed to the drain valve is a rod, extending upward to a point above the glass measuring vessel, which rod at its upward end is operatively connected with a spring actuated cam lever. On the inner surface of the slidable hood there is fixed a circular ring carrying a pin. When the hood is shut to inclose the visible supply reservoir, the pin engages the lever of the cam and opens the drain valve. When the door or hood is opened to disclose the visible reservoir, the spring in the cam rotates the cam and lowers the rod and drain valve to closed position. This system operates on a different plan from Bowser, and is lacking in identity with any means employed by him. When the door is in the fully opened position, the drain valve is closed and held in position.

Appellant-defendant's 285 pump has a fundamentally different system either from Bowser or the other appellant-defendant's type of dispensers. Operating by means of a rod attached to the drain valve, it is pivotally connected to a rocker arm fulcrum on the top of the measuring vessel frame, this rocker arm being connected by a downwardly extending rod to a rocker arm mounted on the control box below the measuring receiver. When the door of the box is closed, the inner end of this rocker arm is moved upwardly by a cam fixed to the hinge of the door and outside the control box. This causes the drain valve, through this device, to open. When the door of the box is open, the drain valve is closed by gravity, aided by the weighted rod. The drain valve and the dispensing valve are so arranged and operated that the drain

valve cannot be opened when the dispensing valve and door are open. This plan is entirely different from any means suggested by the specifications in Bowser. Its function is entirely different and not obtainable by the Bowser device. The function of the device known as 285 pump bears a similarity to the plan disclosed in Dutton and Stone; that is, it prevents the drain valve from being operated when the hood and dispensing valve are in open position. Bowser's arrangement could not be used in appellant's 285 structure nor could appellant's be used in a Bowser dispenser.

In Bowser, the closing of a door pressed upon a button which actuated the opening of the drain valve, and, when the door was locked, the button was secure from tampering fingers until it was unlocked and reopened. But, while the Bowser apparatus was in an open and operating condition, the operator could readily put his finger upon the button opening the drain valve while discharging a measured quantity to a customer, and permit at least a substantial portion of the quantity measured to be drained back into the supply tank.

The specifications of the original Bowser patent contain the following description in connection with his drainage device: "A push-button 32 is mounted with its stem extending through the lid 29 so as to engage an operating lever 33, the latter having bearing connection against the stem 34 of the valve 24. A pin 35 also is slidably mounted in the lid 29 with its inner end bearing against an operating lever 36 which is pivotally mounted and has also bearing relation against the stem 36 of the by-pass valve 26. The pin 35 is so proportioned that when the lid 31 is in closed position the valve 26 will be held open through the medium of the lever 36 and the pin 35, thus permitting the content of the vessel 22 to pass out through the upper part of the supply-pipe 23 and the by-pass valve into the overflow pipe. Also the lid 31 incloses the push-button 32 so that it may not be operated without opening the lid."

This description clearly shows that, unaided by pressure upon the button, the apparatus would stand with the supply pipe open and the drain valve closed. It is the only function of the door upon the drain valve mechanism to apply and maintain sufficient force upon the button to hold the drain valve open and the supply valve closed. It has no connection with the discharge valve through which gasoline is dispensed to the customer.

Claim 3 of the Bowser reissue patent involves, in an apparatus, a supply pipe, a measuring vessel, means for supplying liquid through the supply pipe to the vessel, and "means for controlling the supply, a closure for preventing access to said controlling means and means automatically set in operation by said closure when brought to closed position for draining said vessel." There is no reference in the claim to the character of means for controlling the supply nor the character of the closure for preventing access to said controlling means, and no suggestion or limitation upon the means automatically set in operation by said closure when brought to a closed position for draining the vessel.

Claim 8 suggests a cabinet with a movable door, a receptacle that will hold accumulating liquid, some undisclosed means for supplying liquid to the receptacle, undisclosed means for dispensing liquid so accumulated, and a "drain means having communication with the receptacle and an operative connection between the drain means and the door." In this claim no mechanical device outside of the cabinet door and receptacle is suggested, described, or reserved. Therefore any kind of means that will dispense the liquid from the receptacle or drain it and which may have some connection with a door is included within the "means." It is indefinite, and it also, as in claim 3, describes a mere function or a result.

In claim 9 there is a cabinet, a door, and a receptacle and some undisclosed "means" for supplying liquid and some undisclosed and undescribed element to actuate the supply means and some means for connecting the drain valve with the door so that the drain valve is operated by the movement of the door having a part in the operative movement of the supply means actuating element until the door is shifted to a selected position.

The action of the Patent Office in excluding claim 2 of the original patent from the reissue patent eliminated substantially all of Bowser's claim to the draining element except the push button and a door, which, when closed, furnished sufficient pressure to hold the drain valve open. In claims 3, 8, and 9, here in issue, it is readily apparent that little of Bowser's claim to the draining element has been retained in them. When the door is opened, it leaves the filling element intact. When it is closed, the filling element is closed and the drain pipe opened. By reason of the length of the push button, when the door is closed, the effect is to push the button. When the door is opened, it simply

relieves the pressure from the button, and, while the door is still open, the valves may be as effectively operated by manually pushing the button in. The rule is well stated in Walker on Patents, vol. 1, p. 195: "Where some of the parts of a combination operate therein to give motion to other parts, which do the final work of the combination, it is proper to specify the former by the use of such terms as 'means,' 'mechanism,' or 'devices' for giving that motion, except when these terms are applied to an element or a part which constitutes the essence of the invention. If they are used under such circumstances the claim will be regarded as functional."

 The essence of the invention here claimed by appellees is the connection of the drain valve with the door so that the drain valve is operated by the movement of the door. The door has no connection with the operation claimed except when it is made to touch the push button. The three claims in question, according to their language, describe nothing but functions, and a function is not patentable. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 556, 18 S. Ct. 707, 42 L. Ed. 1136; Interstate Folding Box Co. v. Empire Box Corp. (C. C. A.) 68 F.(2d) 500; Benoit v. Wadley Co. (C. C. A.) 54 F.(2d) 1041.

Moreover, the result is the same, though we read the appropriate parts of the specifications into the claims which are otherwise functional in character; thus giving aid to the effectiveness intended by the Patent Office. In this instance, after so doing, it is necessary to eliminate so much of the description contained in the specification as is offensive to the interference declared and held against Bowser's invention. After indulging in this mental process, the question is narrowed to this: Does the hanging of a door in such a position that when it is closed, the mere contact of the door with a push button, producing certain results, in and of itself, constitute patentable invention. The door may just as well be eliminated from the claim, for it performs no function other than to remain closed when it is closed. The only function of the push button is its normal service. In its normal state, it is so far exposed beyond the plane of the door jamb as to receive the pressure which comes upon it by reason of the weight of the door.

The contended effect of touching the push button is to change the by-pass valve from a filling to a draining operation. The operation of a by-pass valve is ancient. The sug-

gested arrangement in Bowser's specifications is but a verbose description of the operation of the familiar by-pass valve on the down spout on almost every dwelling. If it is turned one way, the rain goes into the sewer. If it is turned the other way, the rain goes into the cistern. Ordinarily, all of these valves operate manually. But it would require only mechanical skill to operate the by-pass valve on a down spout with a push button and a door, which is not invention.

The moving of a pin inwardly by closing a door solves no problem with which the art was confronted. It is the application of a mere mechanical expedient. A plunger, switch, or pin to control a valve by opening or closing a door has been a familiar expedient for many years, and it is illustrated by the opening and closing of a door to control a damper valve in a furnace (Clotworthy, No. 611,057 [1898]); opening and closing a door in a room in a hotel or closet; pushing a button or plunger to control an electric light switch; opening and closing a door to open and close a valve in a bathroom closet (Burrows, No. 327,133 [1885] and McKay, No. 582,430 [1897]).

In the Brady patent, No. 1,308,572, filed September 11, 1916, issued July 1, 1919, an invention was covered relating to measuring tanks, and was especially applicable for dispensing gasoline to automobiles. The patent expressly provides: "I have provided means whereby the drain cock cannot be opened while the cut-off valve is open, and vice-versa."

The Burrows patent, No. 327,133, illustrates and describes a valve for water closets so arranged that, when the door is opened, the valve is lifted so as to flush the closet.

The Coolidge patent, No. 780,939, issued January 24, 1905, was an arrangement for opening and closing a valve leading to a refrigerating compartment upon the opening and closing of the car doors.

When the original Bowser patent and the reissue patent thereof are read in the light of Dutton and Stone and Brady (September 11, 1916), it is clear that Bowser's device was not an advance in the art, and the patent of Brady carries the date of his invention back even beyond the oral testimony considered by the trial court as establishing appellees' contention that the Bowser invention antedated the invention of Muxen.

 A button connected with a lever to open or close a valve is one of the normal operations of a push button. A door so hung that, when it is closed, it will press a push button,

is not a novel operation. Neither of these performs any new or useful service that it did not perform before Bowser's conception. There is no true combination between the elements of a push button, a door, and the other elements described in claims 3, 8, and 9. The use of doors, buttons, valves, and levers is old in the art, and equally so in the particular association or combination found disclosed in the Bowser reissue patent. When elements are thus associated, they constitute nothing more than aggregation. E. E. Johnson Co. v. Grinnell Washing Machine Company (C. C. A.) 231 F. 988, affirmed 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196.

An examination of this extended record is persuasive of the fact that, prior to the application of Muxen (April 10, 1919), appellant was manufacturing pumps under the Dutton and Stone patent and with the features embodied in the Muxen application; that the officers of appellant were friendly to Bowser; that appellant's officers knew that Bowser likewise was interested in visible gasoline dispensers; and that they even furnished Bowser with glass cylinders, which he was unable to purchase, for use in his experiments. Bowser visited appellant's plant, and, for an hour, Muxen showed him the latest development of appellant in visible dispensing apparatus, even disclosing and explaining to him minutely the operation and co-operation of all of the numerous elements, including the filling, discharging, and draining systems of appellant's No. 117 Victory visible pump. In other words, Bowser was thoroughly familiar with all of the elements of the apparatus before he went to the patent attorney to have an application made for his device. It would be entirely natural for him not to intend to procure a claim that would interfere with the operation of appellant in the manufacture and sale of its No. 117 pump. He received his patent, attempted to operate under it, gave some licenses to manufacturers, and it developed that the manufacture and sale of the Bowser pump was unsuccessful.

After the death of Bowser, his administrators conceived the thought that in some surreptitious way Bowser had been procured not to ask for a claim for his drainage apparatus, and, upon learning that the patent solicitor who acted in Bowser's behalf was also the patent solicitor of the Tokheim people (a fact always understood by Bowser), their suspicion was aroused. Other patent solicitors were employed, and, at the instance of the administrators, application was made for the reissue of the patent and for many additional claims.

Undoubtedly friction developed, and the trial in the court below, in a measure, resulted in a trial of the patent solicitor, indicted for bad faith by innuendo. As the trial progressed, the record shows, it was deemed necessary by appellant to call the patent solicitor as a witness. He testified fully, frankly, and, apparently, fairly. When his activities in behalf of both clients are considered in the light of his testimony, and the file wrapper in the application of Bowser patent, No. 1,316,557, it is apparent that the solicitor gave his client Bowser fair and faithful service. The contention that the attorney, after learning of the intricacies of the Bowser invention, had clandestinely furnished them to appellant, who made use of them and incorporated them into the various pumps it was manufacturing and for which it had enjoyed considerable commercial success, is disproved by the physical fact that none of Bowser's conceptions were embodied in any of the machines ever manufactured by appellant.

There is grave question as to whether, under the statute, appellees were entitled to prosecute an application for a reissue of the Bowser patent. But, in the view we take, that claims 3, 8, and 9 are invalid, and that there is no infringement, it is unnecessary to discuss the other questions which have been raised.

The decree of the District Court is reversed, and the cause remanded, with instructions to dismiss the bill.